WILLIAM A. BREARLEY et al. *v.* MARY ANN BREARLEY et al., Executrix and Executor of Samuel Brearley.

Where a testator gave to his wife absolutely a provision in real and personal estate, and also an annuity of $400 during life, to be paid by his executors, and then empowered the executors to sell the residue of his real estate, and to rent it till sold, directing them to invest the proceeds of the sales of real and personal estate, and all moneys received by them from any other source, until needed for carrying into effect the provisions of the will, and then gave to each of his two children $500, to be paid out of the first moneys in hands of the executors, after paying debts, funeral expenses, and providing for the bequest to his wife, and then directed the residue of personal estate remaining in the hands of the executors at his wife's decease, and all the real estate then remaining unsold, to be divided equally between his two children, and the personal estate being more than sufficient to pay the debts, expenses, legacies, and provide for the annuity. *Held*—

1. That the children were not entitled to the surplus of the personal estates till after the death of the wife.

2. That the executors had a mere naked power to sell so much of the real estate as might be necessary to answer the specific purposes of the will, but no interest in the land itself, and that the title thereto, at the testator's death, vested in his two children as heirs-at-law.

3. That, there being sufficient personal estate to pay debts, expenses, legacies, and provide for the annuity, the executors had no further power over the real estate, and must account for the rents received, and the proceeds of land sold, before filing the bill.

4. That the rents and proceeds of sales of the real estate did not, by the doctrine of conversion, become personal estate in the hands of the executors.

5. That, where the intention of the testator violates no principle of law or morality, it is the only guide in giving effect to a will, notwithstanding it may be unreasonable; and, where the intention is clear, the situation of the testator, or of his family, or property, will not be taken into consideration; but where, taking the whole will together, the intention is not clear, such a construction will be adopted as will relieve against a hardship, and lead to a just and proper result.

This bill was filed to obtain a judicial construction of a will.

The facts of the case, so far as necessary for its clear understanding, appear in the opinion of the Chancellor.

*Messrs. Beasley* and *P. D. Vroom*, for complainants.

*Messrs. Lanning* and *W. Halsted*, for defendants.

THE CHANCELLOR. Samuel Brearley, late of the city of Trenton, deceased, by his last will and testament, bearing date the 25th day of September, A. D. 1846, made the following disposition of his estate :

First. He ordered the payment of all his debts and funeral expenses, as soon as convenient after his decease.

Second. He gave to his wife, Mary Ann, in fee simple, his house and lot of land in Trenton, where he resided at his decease, in lieu of dower.

Third. He gave to his said wife all the furniture and household goods, and his library, as the same were in his house at his death.

Fourth. He gave to his said wife the annual sum of $400, to be paid to her by his executors, in quarterly payments of one hundred dollars each, from the time of his decease, during the term of her natural life.

The fifth clause is in these words : " It is my will, and I do hereby, for that purpose, authorize and empower my executors hereinafter mentioned, to sell all my estate, both real and personal, excepting such parts thereof as are disposed of, either at public or private sale, as they may deem advisable ; the said real estate to be rented at their discretion, until such time as a fair price can be obtained for the same, or any part thereof, and when the same, or any part thereof shall be sold, to make, execute, and deliver unto the purchaser or purchasers thereof, good and sufficient deed or deeds of conveyance in fee simple for the same. And I do further devise and request my said executors, that all the moneys arising from the sales of my real and personal estate, or which shall come to their hands from any other source or sources whatsoever, shall be placed at interest on good freehold security, at the discretion of my executors, until such time as the same, or any part thereof, shall be needed for the purpose of carrying into effect the provisions of this my last will and testament."

Sixth. He gives to his daughter, Eliza Ann English, wife of Thomas R. English, and to his son, William Armstrong Brearley, the sum of five hundred dollars each, to be paid them by his executors out of the first moneys they shall have in hand from his estate, after paying his debts and funeral expenses, and providing for the bequest in favor of his wife.

The seventh clause of the will is in these words: "It is my will, and I do hereby order and direct, that the residue of my personal estate remaining in the hands of my executors at the decease of my wife, Mary Ann, and all my real estate which shall remain unsold at the time of her decease, shall be equally divided between my said daughter, Eliza A. English, and my son, William Armstrong Brearley, share and share alike."

And he appoints his said wife executrix, and Isaac W. Lanning executor, of his said will.

The bill is filed by the two children named in the will, William A. Brearley and Eliza Ann English, and by Thomas English, the husband of Eliza Ann.

The object of the bill is to obtain a judicial construction of the will.

The complainants insist that, after payment of the legacies, and appropriating a fund sufficient to secure the payment of the annuity to the widow, they are entitled at once to the residue of the real and personal estate; and they further ask, in case the court should be of opinion they are not now entitled to this residue, that the executor and executrix may be decreed to pay them the interest on the said residue, at such times as the same shall arise, and in such manner as shall be deemed right and equitable.

The defendants have answered the bill, and they insist that the complainants are not entitled to any part of the estate, except their said legacies of $500 each, until the death of the executrix, the testator's widow. The case is submitted upon the bill and answer.

It appears, by the pleadings, that the said William and Eliza are the only children and heirs-at-law of the testator; that immediately upon the testator's death the executor and

executrix possessed themselves of the personal estate ; that since that period they have collected the rents and profits of the real estate, and have sold a small part of the real estate, the proceeds amounting to four hundred dollars ; that they have paid the specific legacies and debts, amounting to three thousand nine hundred and sixty-nine dollars and nineteen cents ; that the personal estate is valued at about seventeen thousand dollars, and the real estate at about eighteen thousand dollars.

It was argued, by the complainants' counsel, that there is nothing in the situation of the testator's property, nor is anything disclosed or suggested in the circumstances or character of his children, to suggest the propriety of postponing the enjoyment of their large portion of this estate until the death of the widow.

They are his only children and heirs-at-law. He intended they should have the bulk of his estate, and yet, by such postponement, they take it upon the happening of an event which may not occur during their lifetime. The widow is the step-mother of these children, and of middle age. The testator did not intend to place his daughter Eliza's share beyond the reach of her husband, nor was it any want of confidence in his son that induced him to make such a postponement. This is apparent from the consideration that his widow's death might have followed soon after his own, and yet he makes no provision to place the property, in such an event, beyond the immediate control of his son, or son-in-law. In other respects, the testator seems to have disposed of his property in a manner which is reasonable and unobjectionable, and liberal towards those for whom he was bound to provide.

But, however unreasonable in any respect the will may be, it is the will of the testator we must execute. If it violates no principles of law or morality, the testator's intention must be our only guide in giving effect to it. We cannot alter it for the purpose of making it more liberal or just, according to our estimate of liberality and justice.

If the language is not ambiguous, and the intention is sig-

nified by apt words and phraseology, there is no room for construction. It is not proper for the court first to determine what the will ought to be, and then exercise its ingenuity in producing such a result. The testator has the right, by law, to dispose of his property arbitrarily, and without giving reasons for the disposition he makes of it. If there was any ambiguity of language or phraseology to make it doubtful what the intention of the testator was, the absence of all motive apparent on the face of the will, or derived from the situation or circumstances of his family, to induce him to make such a postponement, would be entitled to great weight in controlling the construction. But if no such ambiguity exists, it is not entitled to any consideration.

The complainants insist that by a fair construction of the will, the debts and legacies having been paid, and a fund appropriated sufficient to secure the widow's annuity, they are entitled now to all the estate, real and personal, except that fund; that when the testator directed in the seventh clause of his will, the *residue* of his estate to be equally divided between his two children, on the death of his widow, the word *residue* referred to the particular fund appropriated for the annuity, and which necessarily must remain in the executors' hands until the happening of that event.

In support of this construction, the phraseology of the fifth clause of the will is relied on.

This clause directs the executor and executrix to sell all the real and personal estate not specifically disposed of; to rent the real estate until such time as a fair price can be had for it; to sell and give deeds for it, at their discretion, or any part thereof; and to place out all moneys arising from such sales of his real and personal estate, or which shall come to their hands from any source whatever, at interest, on good freehold security. Then follows this language: "At the discretion of my executors, until such time as the same, *or any part thereof*, shall be needed for the purpose of carrying into effect the provisions of this my last will and testament." It is argued that the words "*or any part thereof*," plainly indicate that the testator had in view the provisions of his

will which required only a part of his estate, and consequently did not refer to the final distribution of his property, when not a *part* only would be wanted, but the whole residue, for the purpose; that if a part only of the proceeds of such sales of the real and personal estate should be needed for the annuity, the specific legacies and debts—the directions to the executors being to rent, sell and invest until such time as the whole, or any *part*, should be wanted to answer the purposes of the will—when a *part* answers these purposes, the complainants are entitled to the residue.

This is a very critical argument. I think it is satisfactorily answered by a reference to the fact that, in the next clause of the will, the testator gives to his son and daughter each a legacy of five hundred dollars, and the time when they are to receive it, and the circumstances under which it is to be paid, (for it is after all the bequests and legacies are secured and paid,) is the very time, and under the exact state of things, when and upon which they would be entitled, upon the construction insisted, to the whole of the residue, real and personal. The testator directs these legacies of five hundred dollars each, to be paid them, after his debts are paid and after provision has been made for the annuity in favor of his wife. If he intended they should have at that time the whole residue of his estate, except the annuity fund, amounting to upwards of $20,000, how is this particular bequest to them accounted for, and reconciled with such intention?

But it is further argued that the testator, when he orders and directs the residue of his estate, at the death of his wife, to be divided between his son and daughter, the *residue* referred to is the fund appropriated by the executors to secure the annuity to the widow.

If this is so, then the testator died intestate as to more than one-half of his estate. The whole estate is estimated at thirty-five thousand dollars. The legacies amount to about fifteen hundred dollars, and the debts and expenses say four thousand dollars. Taking a fund of eight thousand dollars to secure the annuity, and there is upwards of twenty thousand dollars of the estate undisposed of by the will.

And again, the testator defines this residue which is to be divided at the death of his widow, to be the personal estate in the hands of the executors at her death, and all the real estate remaining unsold. He meant, then, something more by the *residue* than the fund referred to.

But I have taken a view of this will which is satisfactory to my mind and will afford the complainants some relief, and which, I think, is in accordance with the general intent of the testator.

This is one of those cases in which a court will anxiously look for something affording an opportunity to relieve against a hardship, which, it is scarcely possible to suppose, was foreseen or contemplated by the testator at the time of making his will. I do not mean to be understood as intimating that mere straws should be caught at, or anything affording a mere apology, for the purpose of granting such relief; but where there is any solid foundation upon which we can reasonably rely to justify a construction which will relieve the hardship, and which is not in opposition to the declarations of the testator, but rather is consistent, and harmonizes with the general tendency and design of the will, and leads to a result which commends itself by its justice and propriety, a Court of Chancery or law will not hesitate to avail itself of the opportunity thus afforded of doing what is consonant with equity, and not opposed to the principles and policy of the law.

There are three objects of the testator's bounty—his wife and two children. For his wife he provides first, and liberally, and all the residue of his estate he designs for his children—one of them a daughter married, and the other a son upwards of twenty-one years of age. What he gives to his wife he places in her hands and at her disposal immediately. What he designs for his son and daughter—an estate amounting to upwards of twenty-five thousand dollars, consisting of real and personal—it is insisted is, by his will, committed to the possession and control of their step-mother and a stranger for no other purpose than merely to accumulate, exposed in the meantime to great expense and risk, and at the step-

mother's death to be divided between the two children. What motive the testator could have had, under the circumstances, so to dispose of his property, and who it was he intended to benefit by such disposition, it is difficult to conceive. It exposes the estate to great danger of loss, and incurs a heavy expense to be borne by those whom the testator felt, as his children, were entitled to the greater portion of his property.

Is such the destination of the property by the will?

It will be observed that the testator makes no devise of his real estate at his death. He authorizes his executors to collect the rents and to sell the real estate, and what is left unsold at his wife's death to be divided equally between Mrs. English and his son William.

It has been a subject of very much discussion, in what cases executors take a fee simple in trust to sell under a will, or are invested merely with a power of disposition. The distinction resulting from the authorities seems to be this: that a devise of the land *to executors to sell* passes the interest in it; but a devise that *executors shall sell the land,* or that *lands shall be sold by the executors,* gives them but a power. 1 *Williams on Ex.* 413.

*Sugden on Powers* 111, upon an examination of all the cases, concludes that even a devise of land, *to be sold by the executors,* without giving the estate to them, will invest them with a power only, and not give them an interest.

The case before us is free from all doubt. There is no devise to them of the estate; a mere naked power to sell is given them.

Nor does the power given them as to the rents and profits carry any interest in the land.

By a devise of the occupation, or of the rents and profits of the land, the land itself is carried to the devisee. Such a gift of the rents and profits or of the occupation of the land is considered as a mere circumlocution to express the thing itself. 1 *Roberts on Wills* 461.

But here is no devise of the occupation, or of the rents and profits. The power of the executors to take the rents

is only by implication. The language is, "The said real estate to be rented at their discretion, until a fair price can be obtained for the same." As the power to rent implies the power to collect the rents, the executors possess the power of collecting; but it will be seen the interest given them in these rents and profits is very far from conferring upon them any title to the land.

The title to his real estate, at the testator's death, vested in William A. Brearley and Eliza Ann English, two of the complainants, as his heirs-at-law. They are in by descent, and if the executors can enter upon the heirs by descent, it is only by the will, and to execute a power conferred upon them to answer some specific purpose expressed by the testator. For, suppose the testator had conferred upon the executors a power to sell, designating no purposes for which such sale should be made, the executors would not be authorized, under this power, to disturb the heirs in their inheritance. If we find them, in the further examination of this will, and the case presented by it, that there are no purposes of the testator to be answered by a further sale of the real estate, the power of the executors over it is at an end.

The executors are authorized by the will to take the rents and profits, and sell the real estate, and the proceeds to apply for the purpose of carrying into effect the provisions of the will. After such purpose is answered, the residuary real estate, if not otherwise disposed of by the testator, the heirs take by gift of law, and not in consequence of the testator's intention.

What are the provisions of the will, to carry which into effect these executors have a right to enter upon the inheritance of the heirs and deprive them of it?

The annuity is provided for by the fund set apart by the executors, and the executors have in their hands a large personal estate, abundantly sufficient to provide for any deficiency which might be occasioned by accident in the fund. The debts and legacies are all paid. For what purpose will the executors sell this inheritance which the law has cast upon those heirs?

It is not pretended that there is any specific purpose pointed out by the testator; but the will having given the executors the power to sell the real estate, and then subsequently directing the residue of the estate to be divided between the testator's son and daughter upon the death of the widow, it is insisted that the executors may exercise their power of sale, merely to hold the proceeds, and pay them over upon the happening of the event alluded to.

With regard to the personal estate, it will be seen, *that* stands on a very different footing. The executors have got that into their possession. They have a right to the possession of it as the representatives of the testator. But to exercise the power over the real estate, they must invade the rights of others, and divest these complainants of a title which is theirs, not by the intention of the testator, but by gift of law.

Let us now examine the residuary clause of the will and see what it embraces.

The testator does not direct that, upon the death of his widow, *all* the residue of his real and personal estate shall be equally divided between his children, but " the residue of my personal estate remaining in the hands of my executors at the decease of my wife, Mary Ann, and all my real estate which may remain unsold at the time of her decease."

What is to become of the rents and profits of the real estate, and the proceeds of sale? They are not embraced in this residuary clause, unless, by *conversion*, the real estate, by the exercise of the power of sale by the executors, becomes personal property. And this depends upon the inquiry involving the very nice and intricate doctrine of *conversion*.

If, in pursuing this inquiry, we should come to the determination that the rents and profits, and the proceeds of the sale of the real estate, do not become, by the doctrine of *conversion*, personal estate in the hands of the executors, but belong to the heirs-at-law, and not to the next of kin, it will follow that these complainants are entitled to such rents and proceeds at once; because, not being embraced in the residuary clause, and not being otherwise disposed of by the

will, there is no pretence that the enjoyment by them of this property is postponed until the widow's death. And it will follow further, that being entitled to the rents and profits, and the proceeds of the sales, upon the principle that the real estate would not take the character of personal property by being changed into money, they are entitled to the real estate itself, and that the executors have no right to disturb them in the enjoyment of it.

Did the testator, by empowering his executors to sell his real estate, intend it as a conversion? This is a question of intention, to be determined from the language of the will—the particular situation of the testator's property—the character of the devisees and legatees, and all other circumstances which were apparently operating upon the testator's mind, influencing him in disposing of his property.

The testator has shown no intent that he meant to dispose of his real as personal estate. There is no apparent motive, to which we can ascribe an intention to change the nature of the real fund. The manner in which the power and control of the executors over the real estate is conferred upon them, is a circumstance against such intention. It is another circumstance, that the very individuals who take the whole residue are his heirs-at-law. If there is a conversion it is for some purpose the testator had in view. It was not for the convenience of distribution, for he contemplates the possibility of some of the real estate remaining unsold, and *that* he directs to be divided, without its being converted into personal estate. And besides, suppose the death of his widow had followed the day after his own, the whole real estate would have been divided between these two children. The real estate, then, was not ordered to be sold for any such purpose. In the case of *Smith* v. *Claxton et al.*, 4 *Mad. Ch. Rep.* 493, the Vice Chancellor says : Where a devisor directs his land to be sold, and the produce to be divided between A and B, the obvious purpose of the testator is, that there shall be a sale for the convenience of division. But it is very evident, in this case, the testator had no such object in view. Did he intend the property to be converted, that it

might accumulate in the hands of his executors, for the ultimate benefit of those for whom he designed it? His daughter was married, and his son of age; and certainly it was a very precarious mode of disposing the property to accumulate for their advantage, to place it in the hands of their step-mother, and of another in no wise of kin to them.

The blending and disposing of the proceeds of the real with the personal estate, have been constantly considered to afford an argument for the complete conversion of the real estate into personal, but that circumstance is not conclusive. 1 *Roper on Leg.* 356.

It must still depend upon the intention of the testator, and thus every case must rest in a great measure upon its peculiar circumstances.

In *Mallabar* v. *Mallabar*, *Talbot's Cases* 78, cited as Forrester's, it was determined the blending and disposing of the real and personal estate amounted to a conversion. But that case was very different from the one in hand. The testator devised all his messuages, land and hereditaments whatsoever to one sister, her heirs and assigns, forever, upon trust, to sell the same as soon as convenient, and out of the proceeds to pay the debts, and then certain legacies, and among which was one to the heir-at-law. The rest and residue of his personal estate he gave to his sister, the executrix. The question arose between the executrix and the heir-at-law; the heir insisting that there was a resulting trust for his benefit after the debts and legacies were paid. But the Lord Chancellor determined the whole residue went to the executrix. But there was the circumstance that out of this very fund a personal legacy of five hundred pounds was paid to this very heir; and then again it was argued that if it should be construed to be a resulting trust for the heir, the testator's intent would be utterly defeated; for then the personal estate must be first applied in ease of the real; and so the executrix would have but a troublesome affair, without any benefit or consideration, which could never be the testator's intent.

And there is this marked difference between that case and this. The whole of the estate was to be sold and converted

into one fund, showing that the testator meant, at all events, that the whole estate should be sold and converted. But, in this case, as before remarked, the death of the widow might have prevented the sale of one foot of it; and, as long as she lives, the discretion is left with the executors to sell or not, as they may see fit. The blending of the real and personal estate was to create a charge upon the real estate, in aid of the personal, to answer the special purposes of his will, and not with any intention of thereby changing the real into personal estate.

Where a testator gives his real and personal property in trust, to be sold for particular purposes, and does not specifically dispose of the surplus proceeds, but makes a general residuary bequest of his *personal estate*, such a disposition will not include the produce from the sale of the land, in the absence of a contrary intention expressed or inferred from the will, and for this reason : the surplus of the real estate is not made personal; it therefore does not fall within the terms of the bequest. The conversion of the lands into personalty is merely to answer particular purposes which, when performed, the residue continuing land, and being undisposed, of necessity results to the heir. 1 *Roper on Leg.* 352.

In the case before us, not only is there "an absence of a contrary intention expressed or inferred from the will," but the residuary clause, in connection with the context, shows, I think, that the testator had in contemplation, when he spoke of the residue of his personal estate in the hands of his executors, that same estate which he had spoken of and referred to as his personal estate in other parts of his will.

In *Robinson* v. *Taylor and others*, 2 *Brown's Rep.* 589, the testator gave his real and personal estate in trust; the real to be sold, and proceeds invested with the rents and profits thereof; and the question arose whether there was a conversion of real into personal estate. It was decreed that the heir-at-law should take the proceeds of the real, and the next of kin that of the personal estate.

In 2 *Ves., Jr.*, 271, *Chilty* v. *Parker*, Mrs. Chilty devised her real estate to be sold, and all her estate to be converted

into money, "which I give and devise as follows." She then gave several legacies. The purposes of the will were all satisfied without having recourse to the real, which was not sold. The next of kin claimed against the heir. It was argued that all the legacies were given with reference to the general fund directed to be created, and that the testatrix must have supposed that fund might probably be exhausted by the legacies, or nearly so. The Lord Chancellor says: "It is agreed on all sides, that the court is not to execute the will *in toto ;* that the real is not to be converted into money, in order to have the quality of money, and to go as money. Here is the real estate of the testatrix. The heir, if there is nothing to prevent, takes that. If there is a single person existing who has a right by gift from her to any part of it, or the use of it, that person has a right to apply to have it converted into money. There is no such person existing, but the next of kin comes and says it is better for his interest to convert it against the heir. There is no spark of equity between the next of kin and the heir ; but the general principle is, that the heir takes all that which is not for a defined and specific purpose given by the will."

In this case the title is in the heirs. The debts and legacies have all been paid ; the annuity to the widow is secured ; every purpose the testator had in view has been answered. Who is there, then, that has any right to apply to have this estate converted into money ? For whose benefit ? To answer what purpose of the testator ? Who is interested in the real estate or proceeds but the heirs themselves ? There is no clashing of interest here between the heirs, on one side, and the next of kin on the other. Must the estate be converted into money, and to have the quality of money, for the purpose, merely—if a sale will effect it—of postponing its enjoyment by those who are entitled to it, to some future, uncertain period ?

My conclusion is this, that the executor and executrix have only a power under this will to sell so much of the real estate as is necessary to answer the specific purposes of the will ; that those purposes are the payment of the debts and

legacies and the security of the annuity to the widow; that, if the personal estate is sufficient for these purposes, the executor and executrix must account to the complainants for such sales of the real estate as they have made and such rents and profits as have come to their hands; and that the executors, under the residuary clause of the will, have the right to retain all the surplus of the personal estate until the widow's death.

Let it be referred to a master to take the accounts of the executor and executrix. Let any further decree be postponed until the coming in of the accounts, that the court may judge, with more certainty, whether the real situation of the estate is such that the purposes of the testator may be answered, with the view taken of the case.

I trust the view I have taken will be satisfactory to the parties. The defendants ought to be satisfied. It leaves upwards of $11,000 in their hands to secure the widow's annuity, and relieves them from the burthen and responsibility of taking charge of the real estate. No one has any interest in disturbing the heirs in the enjoyment of the real estate, and with the state of things as they exist. I do not believe it was the intention of the testator they should be disturbed.

Cited *in Boylan* ads. *Meeker*, 4 *Dutch.* 300.