The Chancellor.
The case made by the bill of complaint is as follows: Peter Berrien being seized of the premises in question, on the thirty-first of May, seventeen hundred and eighty, made his will, appointing his sons, Henry Berrien and John Berrien, his executors. After making provision for his wife, and giving some pecuniary legacies to his children, he devises as follows : “ But it is also my will that the residue of my estate, both real and personal, be sold by my executors, and that the money or moneys arising from said sale, after the above mentioned legacies are paid, be equally divided among my four children, Henry Berrien, John Berrien, Sarah Berrien and Ann Berrien, ■and my grandson, Isaac Yan Dyke/’
Peter Berrien, the testator, died the same year, seized of the premises, and leaving this will in force.
In seventeen hundred and eighty-nine, the complainant mar ried John Berrien, one of the sons of the testator, and lived with him until April, seventeen hundred and ninety, when he died without issue. During the life time of John Berrien, he lived with his father on the farm.
*38 Henry and John proved the will, and administered the personal estate, hut never sold the land during the life of John. The complainant alleges that she does not know whether Henry afterwards sold the land, but insists that if he did, the sale was void, because a surviving executor could not sell lands, and that he did not sell so as to divest John of his seizin therein.
The bill further charges, that shortly after the deatli of John, Henry took possession of all the lands and rented them out, and got possession of the title deeds, and kept possession of the lands until his death, which happened a number of years after the death of John.
Peter Berrien, the defendant, is the son of Henry, and is now in possession of the premises, the title to which he claims by several conveyances from the heirs of Henry.
To this bill the defendant.demurred, and assigns as grounds of demurrer; First, want of jurisdiction; Second, because it appears by the bill, that the complainant claims her dower by virtue of a title derived under the will of Peter Berrien, to her husband, when it evident from the devise that he took no such estate under the will as to entitle her to dower.*
From the view which I take of this case, it becomes unnecessary .to notice the first cause of demurrer; and as to the second cause assigned, it is proper in the first place to inquire into the relative rights and duties of the parties at the time of the death of the testator.
He directs his executors to sell the residue of his estate, both real and personal, and after paying his legacies, to divide the proceeds equally among his children, and one grand-child. As he had but two sons, who by descent would at that time have taken each two shares to one share for a daughter, it *39 was evidently the intention to break the descent and divide the property equally. By this devise the devisees severally took a vested interest in the one-fifth part of the proceeds of the sale of che estate both real and personal; and the executors, as trustees, were bound to make sale and division according to the direction sf the mil.
In the case of Herbert v. Tuthill's Ex'r, Saxton, 141, the testator devised that all the rest of his estate, real and personal, be sold by his executors and turned into money, as soon after his decease as conveniently might be, and distributed among his children in the following proportions, viz. two shares to each of his sons, and one share to each of his daughters. It was held that upon the death of the testator, the children took a vested interest, and the court say, the payment of the distributive shares could not be made until after the land was sold, “ but that does in no wise affect the vesting of the estate.”
Now,for the purpose of illustration,let it bo supposed that John Berrien had been married at the time of the death of the testa-' tor, and that he and Henry had sold the premises by virtue of the directions contained in the will; would his widow, in case of his death, have been entitled to her dower in any part of the premises sold? This I think will not be seriously contended: he would have no such seizin of an estate of inheritance as is contemplated in our act, to justify the claim of dower. He is the mere agent or trustee to carry into effect the object of the testator, and has no right in the land, except such as is necessary to carry that intention into effect.
In the case of Hayford v. Benlows, Ambler, 582, lord chancellor Cowper says,that,“ lands devised to bo sold and turned into money, must in equity be looked upon as money, and shall be looked upon as if the testator had sold it in his life time and curned it into money.”
But by the bill it appears that these two executors did not sell lie land at all; that if it was sold, it was after the death of lohn, by the surviving executor; and the complainant insists *40 that the surviving executor had no authority to sell, and that if he did so, his act is void.
This subject was fully discussed in the case of Osgood v. Franklin, 2 John. Chan. R. 19, in which chancellor Kent says, “ According to the settled practice of the court, the trust does not become extinct by the death of one of the trustees; it will be continued in the survivor, and cannot be permitted in any event to fail for want of a trustee.” And he further remarks, “ that the intention of the testator is much regarded in the construction of these powers.” The same doctrine is sustained by the supreme court of this state, in the case of Corlies v. Little, 2 Green, 384.
Therefore, if Henry Berrien, the surviving trustee, sold this property, I am of opinion that he had a right to do so ; and if he did not sell it, he might have been compelled to do it by any one of the parties in interest; and it is very difficult to believe, at this late period, that this property was not sold by Henry, and the proceeds properly distributed. The bill does not deny that it was so sold by Henry. I do not, however, think it necessary to resort to this presumption, in order to avoid the claim of the widow in this case. She is now, after the lapse of about forty-six years, for the first time claiming her right of dower in these premises, and asking the aid of this court in that respect. The court cannot think her claim strengthened by the lapse of time, nor by the neglect of her husband to perform the trust reposed in him by the will. It is considered more consistent with authority and with the equity of the case, to adopt the principle laid down by lord chancellor Thurlow, in 1 Vesey, 366, 367; where he says, “ I should not inquire when real estate might be sold with all possible dilligence, for it might be the very next day, or that very evening, and therefore the court always, in such a case, consider it as sold the moment the testator is dead; for where there is a trust, that is always. considered here as done, which is ordered to be done, and the court cannot measure the time.”
The same doctrine is sustained in the case of Craig v. Les *41 lie, 3 Wheaton, 563, where all the authorities upon the subject are collected. Justice Washington, in that case, states the principle upon which the whole of the doctrine is founded, to be, “ that a court of equity, regarding the substance and not the mere forms and circumstances of agreements and other instruments. consider things directed or agreed to be done as having been actually performed, where nothing has intervened which ought to prevent a performance.”
In this case, what has intervened which should have prevented the execution of the trust? Nothing is alleged in the bill, and it would be a violent presumption to suppose that the two daughters and one grand-son, would have surrendered their rights under the devise in the will, which were that each should have one fifth part of the residue of the estate, for the one seventh part to which they would have been entitled by descent.
I am therefore of opinion, that the complainant is not entitled to her dower, and that the demurrer is well taken.
Decree, accordingly.

 It appears by tbe pleadings on file, tbat tbe complainant claimed tbat title became Tested in ber husband, John Berrien, by descent from his father, Peter Berrien; and the reason assigned for demurrer is, that the complainant claims dower in the land “as having descended to her husband, John Berrien, from his father, Peter Berrien, when it is manifest from the will of the said Peter Berrien, as set forth in the bill of the complainant, that no such desent of lands took place.”