Crane v. Bolles.

AUGUSTUS CRANE and THOMAS N. BOLLES, executors of the will of Nathan Bolles, deceased,

*v.*

EZRA B. BOLLES et al.

1. Where a will imperatively required the executors thereof to sell real estate in fee after a short time, and during that time to control the property by leasing it, collecting the rents, paying the taxes, insurance and repairs, and incidental expenses in its management, and made no other disposition of the property—*Held*, that the fee went to the executors in trust for the purposes aforesaid.

2. Where a testator imperatively provided that his real estate should be sold by his executors, and that the sale should take place upon the request or by the consent of a majority of his "said children," he having previously named his children—*Held*, (*a*) that a majority of the whole number of children, although some are dead, must unite in the request or consent; (*b*) that the provision for the request or consent of the children, in view of the scheme of the will, did not confer upon them discretion to defeat a sale.

3. If the spirit of the whole direction of the will clearly exhibits that the testator intended that his real estate should, in all events, be converted into money, then, notwithstanding discretion may have been given to his children as to the time when the sale would take place, the real estate must be considered as converted into money from the testator's death.

4. A testator having directed divisions of moneys among his children from time to time after his death, provided that the issue of any child "who may hereafter decease" should "receive the share or portion" to which their

Crane *v.* Bolles.

parent would be entitled if living—*Held*, (*a*) that the parents respectively took vested estates in each of the sums to be divided, subject to being defeated by their dying before distribution or payment of the respective sums; (*b*) upon the death of a parent, his or her issue take, by substitution for him or her, a vested estate; (*c*) the issue surviving the parent take, although they do not survive the periods of distribution of the several sums; (*d*) they take as joint tenants and not as tenants in common.

On bill, answers, replications and proofs.

*Mr. John H. Meeker*, for the complainants.

*Mr. John W. Taylor*, for Henry C. Howell.

*Mr. Frederick T. Johnson*, for Ezra B. Bolles and others.

*Mr. George M. Robeson*, for John Hone and others.

THE CHANCELLOR.

The complainants seek a construction of the will of Nathan Bolles, deceased, and instructions regarding their duties under it. So far as their present necessities require, they are entitled to the aid and direction of this court, but the court will not determine questions which have not yet actually arisen and may never arise. Especially will it avoid the determination of such questions when it appears that other parties than those presently before the court will be concerned in their solution. *Traphagen* v. *Levy, 18 Stew. Eq. 448.*

Nathan Bolles died testate on the 2d of February, 1871, possessed of about $100,000 worth of personal estate, and seized of three parcels of valuable real estate in the city of Newark; a residence, his homestead, on Park street, another residence on Washington street and a business site on Broad street.

By his will, which was dated on the 26th day of March, 1865, after revoking former wills and directing the payment of his debts and funeral and testamentary expenses, he gave, devised and bequeathed to his widow the use and enjoyment of his home-

Crane *v.* Bolles.

stead and the furniture therein, for her natural life, and continued therein in the following language:

"*Fourthly.* I also give and bequeath to my said wife the annuity or annual sum of fifteen hundred dollars, to be paid to her quarter yearly, by my executors hereinafter named, out of the rents and profits of the premises known as numbers 240, 242 and 244 Broad street, Newark, aforesaid, so long as the said premises shall remain unsold; and after the sale of said premises, as hereinafter provided, I give and bequeath to her, in lieu of said annuity, the interest and income of twenty-five thousand dollars of the proceeds of such sale, which I hereby authorize and direct my said executors to invest as securely and profitably as practicable, with power to vary the securities from time to time as they may judge expedient, and the income or interest arising therefrom to pay to my said wife quarter yearly during her natural life.

"*Fifthly.* All the residue of my personal estate, I give and bequeath to my children, viz., Ezra B. Bolles, Mary E. Crane (wife of Augustus Crane), Henrietta A. Meeker (wife of John H. Meeker), Julia F. Clapp (widow of Henry B. Clapp), Thomas N. Bolles, Nathan J. Bolles, Emma C. Adams (widow of William F. Adams), and Anna A. Bolles, to be equally divided between them share and share alike.

"*Sixthly.* I give, devise and bequeath to my said daughter, Emma C. Adams, the use and enjoyment of the house and premises where she now resides, known as number 141 Washington street, Newark, aforesaid, for and during her widowhood, and free from all taxes and expenses for repairs necessary to be made, and for insurance.

"*Seventhly.* I hereby authorize and empower my said executors, upon the request or by the consent of the majority of my said children, to sell either at public or private sale, and convey, upon such terms and for such price or prices as my said executors shall deem proper, all or any part of my real estate wheresoever situated (except my said homestead, which may be sold after, but not before, the death of my said wife, and said premises, No. 141 Washington street, which may be sold after, but not before, the remarriage or decease of my said daughter, Emma C. Adams), and after retaining twenty-five thousand dollars (to be invested for the benefit of my said wife), and the further sum of five thousand dollars (to be invested as hereinafter mentioned) from the proceeds of the sale of the said premises, 240, 242 and 244 Broad street aforesaid, to divide and apportion the residue of the net proceeds of sale of said real estate among my said children, as directed in the fifth item of this my will.

"*Eighthly.* I give and bequeath to my said children, to be divided among them in equal portions, the household goods and furniture aforesaid, or the proceeds of the sale thereof (if a sale thereof is thought best by my executors), after the death of my said wife.

"*Ninthly.* I authorize and direct my said executors, until the sale of my real estate, to keep the same in good repair, to pay all taxes and assessments against the same, to keep the buildings thereon well insured and to rent or

Crane v. Bolles.

lease the same (with the exception of the said homestead and Washington street premises during the life of my said wife and the widowhood of my said daughter, Emma C. Adams, respectively), and to pay to and divide among my said children in equal shares the net rents and profits remaining after deducting necessary outlays and expenses for the purposes aforesaid, and the annuity of fifteen hundred dollars from the said Broad street premises; it being my wish that the expenses for taxes, assessments, repairs and insurance and other necessary charges upon and in respect to my said homestead and the said Washington street premises shall be paid, so far as practicable, from the rents of said Broad street premises, until the latter premises shall be sold.

"*Tenthly.* I hereby authorize and direct my said executors, upon the sale of said Broad street premises, to retain also from the proceeds of the sale thereof the sum of five thousand dollars, and the same to invest as securely and profitably as practicable until the death of my said wife, and the death or remarriage of my said daughter, Emma C. Adams, and from the income or interest arising therefrom to pay the taxes, assessments, insurance, repairs and other necessary charges upon or in respect to said homestead and Washington street premises, during the time for which they are hereinbefore respectively given to my said wife and daughter.

"*Eleventhly.* I direct my executors, upon the death of my said wife, to divide the said twenty-five thousand dollars invested for her benefit in equal portions among my said children, and, upon the death of my said wife, to divide in like manner the said five thousand dollars directed to be invested as aforesaid, together with the accumulations of interest or income thereon (which I wish to be added to the principal from time to time while so invested).

"*Twelfthly.* Is is my will that the issue of any child who may hereafter decease shall receive the share or portion to which their parents would be entitled to if living.

"*Lastly.* I hereby appoint my son, Thomas N. Bolles, and my son-in-law, Augustus Crane, and the survivor of them, executors and executor of this my last will and testament."

The testator's widow and his daughter, Emma C. Adams, both died in the year 1877. His daughter, Anna A. Bolles, married Henry C. Howell in 1867 and died in 1875, intestate, leaving three daughters her surviving—Elizabeth, who is living and of full age, and Jennie and Anna, who both died in infancy. All the other children of the testator are yet living.

Shortly after the death of the testator, his personal estate, except the furniture in the homestead, was divided equally among his children.

After the testator's death, the widow occupied the homestead and Mrs. Adams occupied the premises on Washington street

until they, respectively, died, and the executors took possession of the Broad street property and leased it, and, after paying out of the income therefrom the expenses of the property, as contemplated by the will, and the widow's annuity, they, from time to time, divided the remainder of the income equally among the testator's children.

After the death of the widow and Mrs. Adams, the executors took possession also of the homestead and the Washington street property and rented them, and, from time to time, hitherto have divided the net income from them, together with the net income from the Broad street property, among the testator's children.

It does not appear that a majority of the children of the testator have ever requested the executors to sell the real estate, or any part of it, or that they have ever consented to such a sale, or have ever been asked by the executors or each other to consent to such a sale. Nor does it appear that there has been any occasion when the propriety or desirability of such a request or consent has been brought in question or considered.

The emergency which has produced this suit is a doubt which has arisen in the minds of the executors as to the propriety of paying to Henry C. Howell, who has become the administrator of his wife's estate, the net income which would properly go to the wife if she were yet alive.

Mr. Howell insists that according to the true construction of Mr. Bolles' will, a conversion of his real estate was directed, and a distribution of that money was provided for, and that he, as administrator of his wife's estate, is entitled to the dividends which would have been due to her if she had lived, and further, if this contention be incorrect and the property remains real estate, that his wife was seized of an undivided interest in which he has curtesy.

The other defendants who have answered, contend that the legal title to the real estate passed to the executors of the will; that Mrs. Howell did not take an interest in which her husband could have curtesy, and that at her death her interest, if any, went to her children and now is vested in her surviving daughter.

It is observed, upon reading the will, that the testator does not
expressly make permanent disposition of his real estate. He
does not expressly devise the fee. His will, however, bears, upon
its face, such evidence of thought and deliberation that, upon
reading it, the mind is constrained to conclude that intestacy as
to any interest in the estate was not thought of. The obvious
scheme was to first securely provide for the testator's wife, and
then, after securing a home for his widowed daughter, divide the
remainder of his estate, reduced to money, equally among all his
children. The conversion of real estate into money was to be
deliberate, instead of forced and hasty. The personalty was to
be divided at once, but the realty, which would be liable to
greater sacrifice by immediate sale, was to be put in control of
the executors of the will, who, while a favorable opportunity to
sell it was awaited, were to lease and care for it, and, after paying
the expenses of its care and management out of the income they
should receive, were to divide the residue of that income equally
among the testator's children or their issue. For the office of
executor the testator selected a son and a son-in-law, who repre-
sented one-fourth of the interest of his children. He clothed
the two men thus selected with the power to sell, and to fix the
terms of sale, but, to secure deliberation and afford his remain-
ing children a voice in counsel as to the sale, he left the time of
the sale to the discretion of a majority of them. It is very
evident that he did not intend that there should be either a fail-
ure to sell the property or that the sale, of the Broad street
property at least, should be long postponed. This is apparent
in every part of the will which bears upon the disposition of
the real estate. A majority of his " said children " were to
request or consent to the sale. The sale, then, was to take place
while they lived. His wife was to have an annuity from the
rents of the Broad street property " so long as said premises
shall remain unsold." This expression imports not only the
sale was to be inevitable, but that it was to take place within the
life of the wife. "After the sale"—after a temporary period—
the wife was to have the income of a fund to be invested for her
benefit. The executors were to preserve, manage and keep pro-

ductive the Broad street property "*until the sale.*" Herein again
the inevitable event—sale—was contemplated. "*Upon the sale of*
*the Broad street premises*" the sum of $5,000 was to be retained
to provide a fund for the preservation of the homestead and
Washington street properties, the sale of which was to be post-
poned until the death of the widow and Mrs. Adams, respect-
ively. Here, again, the language assumed as certain a speedy
sale—that is, a sale within the life of the widow and Mrs.
Adams. By the eleventh paragraph of the will provision was
made for the distribution of two funds to be made up from the
proceeds of sale of the Broad street property. The will made
no provision for either failure to sell or failure of the children
to request or consent to a sale. No other disposition of the real
estate was made, and the only apportionment contemplated was
in money or chattels. Thus, it appears to me, the testator's
intention is unequivocally shown, that his real estate shall be
converted into money. To accomplish his purpose, a sale of
the real estate must take place, and therefore a sale is imperative.
Although, then, there be no express command to sell, such a
command must be implied. That being so, it follows that the
action required of the executors and children is subordinate to
the requirement of sale and must be controlled by it. When an
opportune time to sell arrives, the children must consent and the
trustees must sell. The children may move the executors to
action, at the proper time, by a request, or the executors, at such
time, may demand from the children their consent. If there be
negligent disregard of the duty thus imposed on executors and
children, or an obstinate refusal upon the part of either, the
assistance of this court, to compel the due execution of the trust,
may be invoked. The object of the provision for request or
consent is to insure notice and co-operation between the execu-
tors and the children, and to prevent unreasonable sacrifice of
the property, not to admit the interposition of arbitrary will to
defeat a proper sale, and not to leave it to discretion, either of
the children or executors, whether there shall be a sale at all.
This case is not within the decision in *Kouvalinka* v. *Geibel, 13*
*Stew. Eq. 443,* where Vice-Chancellor Bird held that where a

sale depends upon the request of a third person or the discretion of a trustee, there will be no conversion until the sale actually takes place. Here the direction for sale is imperative. It does not depend on request or consent. It is only as to the precise time at which the sale is to take place that discretion is to be exercised.

The situation here is well described by the following quotation from Chancellor Zabriskie, in *Wurt's Exrs.* v. *Page, 4 C. E. Gr. 365, 375:* "But the question of conversion is a question of intention, and the real question is, did the testator intend his lands should be converted into money at all events before distribution? In this case, it seems to me that the directions in other parts of the will show clearly that he did not so intend. * * * The spirit of this whole direction shows that conversion was intended. * * * All these directions show that he intended that his estate should be converted into money before it was distributed by his trustees; and they would be required to convert it into money before distribution and to pay it over in that form, and the rule is well settled that if the will requires the real estate to be converted into money at all events, notwithstanding the executor may have a discretion as to time, it must be considered as converted into money from the death of the testator." *Cook's Exr.* v. *Cook's Admr., 5 C. E. Gr. 377; Theob. Wills 195.*

As to the testator's children, his entire estate must be considered as personalty.

I think that the fee of the real estate went to the executors in trust, to lease and manage the property until they shall sell it as the will contemplates. The scope and necessity of their authority appear to demand that they have such estate, although it is not expressly given to them. They are imperatively required to convey a fee after a short period of time, during which they are to control the property. When their trust is executed, the fee will have gone to third persons away from both trustees and *cestuis que trust.* No estate in the land is given to the children. On the contrary, the gift of the proceeds of sale and of merely the net rents to them, implies that the title in the land is withheld from them, and that their interest is in personalty only,

growing out of the due execution of the trust.   The case appears. to me in this aspect to be well within the rule, that where a testator directs acts to be done by the executor which belong to the owner of the freehold, and which require a complete dominion over the real estate, a devise to him in fee will be implied. *1 Lew. Trusts (8th ed.) 212, 213; Zabriskie* v. *Morris and Essex R. R. Co.,* 6 *Stew. Eq.* 22; *S. C. on appeal,* 7 *Stew. Eq.* 282; *Lindley* v. *O'Reilly,* 21 *Vr.* 636; *Traphagen* v. *Levy,* 18 *Stew. Eq.* 443; *Perry Trusts* § 315.

The children, then, have no control over the real estate.   They cannot sell, convey or encumber it, and a judgment recovered against one of them will not be a lien upon it.   It follows, also,. that their husbands and wives cannot have dower or curtesy in. the land.

The effect of the twelfth paragraph of the will remains to be considered.   It provides that the issue of any child of the testator, "who may hereafter decease," shall receive the share or portion to which their parent would be entitled if living.

Here is a gift over to the issue if the parent shall die.   The disposition of the courts is to so construe such a gift that it will interfere as little as possible with the prior gift to the parent, consequently the contingent event, death, is not held to mean death at any time, but death before a particular period, *e. g.,* the period of distribution.   Hence, it is the rule that where there is a bequest to one person, and, in case of his death, to another, the gift over is construed to take effect only in event of the death of the prior legatee before the period of payment or distribution, unless a contrary intention appears by the will.   *Hawk. Wills 254;* 2 *Rop. Leg.* 607; 2 *Wms. Exrs.* 1260; 3 *Jarm. Wills (R. & T. ed.)* 606; *Burdge* v. *Walling,* 18 *Stew. Eq.* 10, 12, where the New Jersey cases are collected.

I do not perceive anything in the will before me to take the present case out of this rule.   The will speaks from the death of the testator, and the paragraph considered refers to death thereafter.   There is absolutely nothing to warrant contention that. the death referred to is that which shall happen before the decease of the testator, and that the particular period which shall.

determine the contingency created is the time when the testator shall die. On the contrary, the paragraph expressly refers to the receipt of the parent's share and portion, and thereby emphatically makes the time of disposition the particular period in view. It is true, there is to be a disposition of the personal estate immediately upon the testator's death, but the distribution then may not include the proceeds of a sale of the real estate. The will expressly contemplates that in all probability there will be delay in the sale of the real estate and more than one distribution, and it makes provision for a series of payments to the children and a series of receipts by them. It appears to be the proper exposition of the testator's intention in this paragraph to say that the gift over to the issue is to take effect as to each of the several distributions, that the parent shall predecease.

The issue will take by substitution for the parent, and not a substantive or original gift, because they spring from the parent who would have taken if he or she had survived the period of distribution. *Acken* v. *Osborn, 18 Stew. Eq. 377; S. C. on appeal, 1 Dick. Ch. Rep. 607.*

It is now settled in this state, in the case of *Acken* v. *Osborn,* just referred to, which follows the ruling in *Martin* v. *Holgate* (*Eng. & Ir. App.*) that, in order that issue may take where the gift to them is original or substantive, they need not survive the period of distribution; but our courts have not yet passed upon the question whether issue must survive the period of distribution in order to take where the gift is substitutional. In *Crause* v. *Cooper, 1 Johns. & H. 207,* Vice-Chancellor Wood thought that they should survive that period. But in *Lamphier* v. *Buck, 2 Dr. & Sm. 484, 34 Law Jour. Ch. 650,* Vice-Chancellor Kindersley, in a well-considered opinion, reached the conclusion that where a gift to one and his issue is an original gift to the issue, the issue need not survive their own parent, but where it is substitutional, such survivorship is necesssary; but that in neither case is it necessary for the issue to survive the period of distribution. In *In re Merrick's Trusts, L. R., 1 Eq. Cas. 551,* Vice-Chancellor Wood says that his utterance, in *Crause* v. *Cooper,* was not necessary to the decision of that case, and that

after considering the judgment of Vice-Chancellor Kindersley, in *Lamphier* v. *Buck*, he was quite satisfied that it was incorrect. "The form of expression," he said, "amounts only to this: There is a certain period, the testator says, at which his property is to be divided; at that period let it be given to the parents, if they be living, that is one class, or let it be given to all their children, that is another class. He does not say as to the children, if they be living, and I think there is reason for that distinction. * * * The reason is, that the testator had not the intention of depriving the children of the property on account of their not surviving the tenant for life, although their parent would not take if he or she did not survive the tenant for life. As regards the parent, the testator feels that if the parent lives to take the property, the children, through the parent, will have the benefit of it."

The conflicting cases upon this subject are cited by Mr. Jarman in his treatise on Wills (*2 Jarm. Wills (R. & T. ed.) 1749*), who says:

"And it is now settled that children are not by implication required to survive the period of distribution, as expressed with regard to their parent, in whose place they stand, whether the gift to the issue be original—as where it is to such of a class of legatees as survive the period of distribution, and the issue of such as are then dead—or strictly substitutional, *i. e.*, divesting a previous vested gift to the parent."

In *Theob. Wills 498*, it is, in substance, also said that the whole current of recent authority is to the effect that the issue will take although they do not survive the period of distribution, whether the gift to them be original or substitutional.

I am of opinion that the view adopted by the authorities cited, is the reasonable and proper solution of this question. I refer to this question more for future service in this trust, in case all issue in some instance should die before their parent, than for the purpose of determining Mr. Howell's *status* in this litigation. Here the gift over is to a class—"the issue of any child," who are to receive the share or portion to which their parents, if alive at the distribution, would be entitled to.

This provision contains no words of severance or other expres-
sion of intention which will take it out of the rule that a bequest
to a class, without more, creates a joint tenancy. *Hawk. Wills*
*111; 2 Wms. Ex. 1462; 2 Rop. Leg. 1359; Theob. Wills 321.*
Elizabeth Howell survived her sisters and is now entitled to that.
which shall come to her mother's portion.

I think that her mother took a vested interest in Nathan
Bolles's estate, subject to being defeated by her failure to survive
the period of distribution, and, the contingency having happened,.
that Elizabeth, the survivor of her issue, takes a vested interest
in her stead. It is true the gift is not direct, but comes through
a demand to divide and pay at a future time, upon a given event,
yet the whole will most clearly evinces the purpose of the post-
poned payment to be for the convenience of the estate, and brings
the case within the exception to the general rule that such gifts
do not vest, which has recognition and approval, in *Post v. Her-*
*bert's Exrs., 12 C. E. Gr. 540.*

My conclusion is, that all future payments on account of the
interest of Mrs. Howell, either from net income or proceeds of
sale, must be to her daughter.

As to the question propounded by the executors, whether it is
necessary that a majority of all the testator's children must unite
in a request or consent to sell the real estate, I am clearly of
opinion that the majority must be of the whole number, and not
merely of the surviving children at any time. The testator names
his eight children, and then requires the request or consent of a
majority of "said children." His language is plain and unam-
biguous, and it is not surprising when we consider that he did
not contemplate a postponement of the sale beyond the lives of
his children or a majority of them.

I need not now direct the executors as to the disposition of the
share of a child of the testator who may die before distribution
without having had issue. The emergency which may require
such direction has not arisen and may never arise.

By his answer, the defendant Henry C. Howell asks the inter-
ference of the court to now compel a sale of the real estate. Such
action is not properly invoked by answer. Besides, Mr. Howell

has no interest which entitles him to this relief, and I have no proof before me of that negligence or obstinancy or bad faith which I conceive to be necessary to justify the desired interven· tion in the execution of this trust.