The prayer of the petition is "that an order may issue out of this court restraining Morris J. Woodring, sheriff of the County of Monmouth, from conducting any sale of the interest of Richard H. Appleby in and to the properties herein mentioned * * * and restraining the said sheriff of the County of Monmouth" and others, their agents, attorneys, c., from any further act, step or proceeding toward the sale of said property, "pursuant to the advertisement by the said sheriff of the said property for sale." The petitioners are assignees of the interest of Richard H. Appleby in the estate of his father, the late T. Frank Appleby, of Asbury Park, New Jersey; and also of a judgment of the Asbury Park and Ocean Grove Bank against the said Richard H. Appleby, on which it is claimed there is now due the sum of $84,058.90.
The respondents are judgment creditors of the said Richard H. Appleby, who caused the sheriff of Monmouth County, pursuant to writs of execution on their respective judgments, to levy upon and advertise for sale the interest of the judgment debtor in the lands described in the petition and of which the testator died seized. The judgment of the respondent Carl G. Harr amounts to $20,293.62; and that of the respondent Kays R. Morgan amounts to $5,455.16. There are conflicting claims between the petitioners and the respondents touching the priorities of their several judgments, executions and levies. Primarily, however, the petition is based upon the contention that the judgment debtor, Richard H. Appleby, has no legal title to or any leviable interest in the five parcels of real estate referred to in the petition; that his only interest therein was an equitable one under his father's will, and that that interest had been assigned to the petitioners' assignors prior to the date of any and all of said judgments, and that the legal title to said real estate is vested in the surviving trustee and, therefore, not subject to execution, levy and sale under a judgment against the judgment *Page 75 
debtor. The respondents have filed an answer to the petition and issue has been joined thereon. The matter is submitted on petition and answer, without further proofs, but evidence in the main case concerning the testator, his estate and the preparation and execution of his will, as to which there is no controversy, must, of course, be considered.
The judgment of the respondent Morgan was entered in the Monmouth County Court of Common Pleas on August 27th, 1931, and that of the respondent Harr, in the Supreme Court of New Jersey on October 13th, 1933. Execution on the Morgan judgment was first issued on January 22d 1946, and that on the Harr judgment on June 4th, 1945. The Appleby estate was being administered by the executors as trustees when the judgments were obtained and that trustee administration has continued to date, a period of 13 to 15 years. This belated assertion of liens on the judgment debtors' interest in the five parcels of land levied upon does not commend itself to a court in which vigilance of the suitor is a prime requisite.
I shall first consider the question of title to the real estate, as the decision of that question may be dispositive of the whole controversy. Whether or not the surviving substituted trustee holds the legal title to the lands in question depends upon a construction of testator's will, and whether by that document a valid trust in those lands was created. Cowan v.Storms, 121 N.J. Law 336. In that case Mr. Justice Heher, speaking for the Supreme Court (at p. 340), said:
"* * * it is an established doctrine in this state that, except as modified by statute, a trust estate is not liable to seizure and sale on execution at law. At law, in the absence of statutory provision, neither a judgment nor an execution issued thereon gives rise to a lien upon a mere equitable estate or interest. The interest of the cestui que trust is in such case reachable only in equity for the satisfaction of a judgment against him."
Although no express words creating a trust are used by testator, nevertheless a testamentary trust may be found by implication where it is manifest that such is the intention of the testator, or that the testator's obvious purpose can not be *Page 76 
executed except through the instrumentality of a trust, or where executors are given duties beyond their ordinary functions as such. Scarborough v. Scarborough, 134 N.J. Eq. 201; Boylan
ads. Meeker, 28 N.J. Law 274; Crane v. Bolles, 49 N.J. Eq. 373; Zabriskie v. Morris and Essex Railroad Co., 33 N.J. Eq. 22; Lindley v. O'Reilly, 50 N.J. Law 636; Federal Trust Co. v.Ost, 120 N.J. Eq. 43; Traphagen v. Levy, 45 N.J. Eq. 448;Berrien v. Berrien, 4 N.J. Eq. 37.
The testator, T. Frank Appleby, a resident of Asbury Park, Monmouth County, New Jersey, died at Baltimore, Maryland, on December 15th, 1924, leaving a last will and testament dated the day before his death, in which he appointed his widow and three sons, of which Richard H. Appleby was one, "my executors and trustees of this my last will and testament." Upon the probate of the will the named executors and trustees qualified and thereafter functioned as such until January 21st, 1936, when by the final decree in this cause they were "relieved and discharged from all further duties of their said office of trustee, except the duties of accounting, c.," and two individuals were thereupon and thereby "appointed trustees in the place and stead of" the trustees appointed by the will, naming them, "to execute the trust created by the last will and testament of T. Frank Appleby, deceased." Upon the death of one of the substituted trustees on November 11th, 1938, W. Harold Warren of Asbury Park, New Jersey, was appointed in his place and stead; and upon the death of the other substituted trustee, on June 16th, 1944, Mr. Warren became the sole surviving substituted trustee, and has been acting as such since that time.
As the will must be construed from its four corners and as the testator's intention is the law of wills, I deem it advisable to recite herein his will in full. The following is a copy of that will:
"IN THE NAME OF GOD, AMEN:
"I, T. Frank Appleby of the City of Asbury Park, New Jersey, being of sound mind, declare this to be my last Will and Testament. *Page 77 
"I give and bequeath unto my beloved wife Alice C. Appleby the furniture and fittings in the residence known as No. 901 Grand Ave., Asbury Park, (N.J.), as well, as my automobile.
"I give and bequeath to my beloved son Theodore F. Appleby Jr., 50% of my stock of the T. Frank Appleby Co., as well as 50% of my stock of the Reliance Realty Co., the Company holding title to the property situate on the South East Corner of Main St., 
Mattison Ave., Asbury Park, New Jersey, I give and bequeath to my beloved son Stewart H. Appleby 25% of my stock of both the T. Frank Appleby Company as well as the Reliance Realty Company, I give and bequeath to my beloved son Richard H. Appleby 25% of my stock of both the T. Frank Appleby Company as well as the Reliance Realty Company. The difference in divisions of these two stocks to my sons named therein comes from the fact that my son Theodore F. Appleby Jr., is the Manager of the T. Frank Appleby Co. business.
"I hereby direct my Executors to pay to my son Theodore F. Appleby, Jr., a sum equal to that obtained by Stewart H. Appleby and Richard H. Appleby from the net proceeds of the property No. 903 Grand Ave., Asbury Park, N.J., when disposed of.
"I hereby direct my Executors to hold intact my following properties until April 1st, 1946.
"1st. The property situate on the South West Corner of Cookman Ave. Emory St., Asbury Park, N.J., and known as No. 600 602 Cookman Ave.
"2d. The adjoining property known as No. 604 606 Cookman Ave., Asbury Park, N.J.
"3d. No. 605 Lake Ave., Asbury Park, N.J.
"4th. The property known as the P. R. Bldg. situate at the junction of Bangs Ave., and Cookman Ave., Asbury Park, N.J.
"5th. The property known as the Franklin Bldg. on Cookman Ave., adjoining the P R Building — my desire that these five named properties shall be leased until April 1st, 1946, and then sold should my Executors so decide.
"My remaining properties, I hereby authorize my Executors to sell at public or private sale when in their judgment they so decide.
"My holdings in the Standard Realty Co. Stock as well as my Building and Loan Association stock as well as my other stocks, I hereby authorize my Executors to dispose of when they deem it to the best advantage of my estate.
"The net rentals or income as well as the proceeds from the sale of my real or personal property, I direct to be divided as follows to my beloved wife Alice C. Appleby on a basis of 34% to my beloved sons Stewart H. Appleby, 22%, to my beloved son Richard H. Appleby 22%, to my beloved son Theodore F. Appleby, Jr., 22%. Should any of the four named above die before April 1st, 1946, then his or her share is to go to the survivors of the sons in the event of my wife passing away before April 1st, 1946, then in that event here share as named herein, is to be equally divided between my sons or their survivors. If on April 1st, 1946, it is deemed advisable by my Executors to sell or dispose of the five properties mentioned herein, *Page 78 
I hereby authorize my Executors to give good titles to the within mentioned properties by selling the same at public or private sale and take back first bond mortgages on any or all of these properties if they so decide.
"I further direct that my beloved wifes Alice C. Appleby interest in these properties, viz, 34% be invested by my executors, in suitable securies, the proceeds of such securities to be paid to her during her natural life; in the event of her death her interests named above, is to be divided equally between Stewart H. Appleby, Richard H. Appleby and Theodore F. Appleby or their survivors. The 34% given to my wife Alice C. Appleby is in lieu of her dower.
"I direct my Executors to pay unto themselves, or their survivors, the net income in monthly installments.
"I give and bequeath to the Young Men's Christian Assn. of Asbury Park, N.J., Three Thousand Dollars, toward the erection of a new building as soon as they have acquired title to the land S.E. Cor. Main St., and Munroe Ave., Asbury Park, N.J., this sum is to be paid in three annual payment.
"I give and bequeath to the Trustees of the First Methodist Episcopal Church of Asbury Park, N.J., the sum of Two Thousand Dollars to be paid in annual payments.
"I direct my Executors to expend One Thousand Dollars toward the erection of a suitable entrance of the Old Bridge Cemetry, where I wish to be buried in our family plot I hereby name Alice C. Appleby, Stewart H. Appleby, Richard H. Appleby and Theodore F. Appleby, Jr., my Executors and Trustees of this my last will and testament. I further direct that they shall not be required to furnish bonds for the performance of this will.
"Done at Baltimore, Md., this 14th of November 1924.
"T. FRANK APPLEBY (L.S.)
"Signature witnessed at the request of the testator and in the presence of each other
 "Henry F.J.E. Pscherer. 2029 E. Lombard St., Balto. Md. "Margaret Dorsey, Pikesville, Balto. Co. Md. "Filed, January 5, 1925."
Obviously, this is a "home-drawn" will, the production of one unskilled in the use of technical legal terms and language. Who wrote the will does not appear. He may have written it himself or someone, obviously not a lawyer, may have prepared it for him as he was on his death-bed, when it was executed. The testator was not a lawyer. He was, however, prominent in the community in which he lived, a successful business man and a representative of the Third Congressional District in the United States Congress at the time of his death. He died possessed of an estate appraised at *Page 79 
in excess of $1,000,000. For these reasons the use of technical language in the will or its omission therefrom can not be given the significance in the construction of the will which would be accorded it had the will been prepared by a skilled lawyer.
Twice heretofore the will here involved has been construed to establish a trust of which the executors were the trustees — once in this court in the instant case, and once in the Supreme Court of this state in a cause entitled Marguerite E. Appleby v.Stewart H. Appleby, S.C. Docket No. 5643-CJ-11. The final decree of the Court of Chancery in the instant case, entered on January 21st, 1936, recognized the existence of a trust and a trust estate in the hands of the trustees, otherwise the provision of the decree appointing substituted trustees, who have since functioned as such, would be a nullity. In the Supreme Court case, application was made "for an order permitting the sale, under an execution issued on February 20th, 1941, on a judgment in the sum of $2,132.25, docketed in this court December 20th, 1934, and a levy made on May 1st, 1941, by Morris J. Woodring, sheriff of Monmouth County, of the right, title and interest of Stewart H. Appleby, defendant, in and to the principal due or become due from the estate of the late T. Frank Appleby and from the trustees of the said estate, and the residuary interest of said defendant in said estate;" and also for an order permitting the sale under a like execution "issued on February 24th, 1941, on a judgment in the sum of $3,567.26 docketed in this court December 26th, 1934, and a levy made on May 1st, 1941," on the same interest of said defendant in said estate. These applications came before Mr. Justice (now Chief Justice) Case on July 14th, 1941, and were denied by him by order entered in the cause on July 18th, 1941. Inspection of the file discloses that the matter was heard by him in chambers pursuant to statute and that in disposing of the applications he said:
"I am unable to determine what the will means as to the extent of the period of trusteeship. I think quite clearly that a trust is created and a trust that is intended to create an income. Down to what time I do not know. Counsel says *Page 80 
April 1st, 1946, and that then the trust is to end. I do not see that. It is not clear to me that that is so. But, nevertheless, it is a trust * * *."
By that decision it was held that the interest of a brother of Richard H. Appleby, the judgment debtor here involved, who had a like interest in his father's estate, was not subject to execution, levy and sale under a judgment at law because it was only an equitable interest in a trust estate. I might well rest my conclusion in the instant controversy on the authority of that decision, but in view of the argument in respondent's brief, I deem it advisable to explore testator's will and, if possible, discover his intention, for when that intention has been ascertained, if its fulfillment would violate no principle of law or morality, it is the only guide in giving effect to the will and it will prevail over technical rules and words in either their technical or ordinary meaning. Brearley v. Brearley,9 N.J. Eq. 21; Scarborough v. Scarborough, supra.
The scheme of the testator's will is not difficult to discern. He had successfully engaged in the real estate and insurance business in Asbury Park, New Jersey, for many years. His son, Theodore, was "the manager of the T. Frank Appleby business" and, no doubt, had contributed largely to its success. The testator desired to reward him for his faithful services and at the same time provide adequately for the comfortable support of his wife during her lifetime, for which purpose he set aside approximately one-third of his estate, and to make an equitable division of his remaining estate; and, also, after the death of his wife, of thecorpus of the trust estate set up for her benefit, among his three sons. He desired to provide an income, not only for his wife's support, but also for his three sons pending the ultimate distribution of his estate. He was optimistic as to the future of Asbury Park real estate in which he had dealt for many years and many parcels of which he owned. To him the obvious source of the income for the support and maintenance of his wife, and for the aid of his children, pending the final distribution of his estate, was the Asbury Park real estate owned by him; and to insure that income he definitely provided *Page 81 
that his executors should "hold intact until April 1st, 1946," five specific properties mentioned and described in the will. All other real estate, as well as personal property, except such as was specifically bequeathed to his wife and children, was directed to be sold. But as I read the will, he desired and intended that his executors should hold intact the proceeds of such sale, as well as the five parcels of real estate specifically mentioned, as a trust fund to produce the anticipated income until after April 1st, 1946. After that date the executors were directed to sell the real estate and divide the proceeds thereof, together with the proceeds of real estate and personal property previously sold, among his three children or their survivors, after first deducting 34% thereof which was still to be held in trust for the benefit of his wife, if she was then alive, until her death, when that also was to be distributedpro rata amongst his three children or their survivors. It is noteworthy that his entire estate, with the exception of three charitable bequests aggregating $6,000, was devised and bequeathed to or for the benefit of his wife and children. The scheme of the will is not complicated although much language and many words are used to express it. A skilled draftsman could probably have condensed the provisions of this will into one-half its space, and with greater clarity. Although there is no specific clause of the will denominated as a residuary clause, nevertheless there was no intestacy.
Numerous decisions of the courts of this state, and other authorities, are cited by counsel for the respondents in support of his contention that the legal estate in the five parcels of real estate specifically mentioned in the will and directed to be held by the executors until April 1st, 1946, vested in the testator's three sons at his death, subject to the power of sale given to the executors. But, as was said by Chancellor Williamson, in Current v. Current, 11 N.J. Eq. 186 (at p.189):
"In relying upon authorities, it is important to consider whether the points which they are relied upon to sustain were necessarily involved in the case — whether they were of greater or less importance to the issues in question or sufficiently *Page 82 
prominent in the case to command the particular attention of the court. * * * as it is the intention of the testator that is to control, a very slight variation in a will sometimes makes a case which seems to be an authority not as applicable as a first impression regards it."
As a matter of fact and law, each case involving the construction of a will must stand upon its own bottom. Rarely will two cases be found alike in all important particulars. It will, therefore, serve no useful purpose to discuss these decisions in detail and attempt to distinguish them from the instant case, suffice it to say that in all of them it is clear that nothing but a naked power of sale was conferred upon the executors, or there were other circumstances which indicated an intention on the part of the testator to vest title to the real estate involved in the heirs rather than in the executors. A careful examination of the cases cited by counsel for respondents will show that in every case where title was held to have vested in the heirs, the testator's will created no trust estate and conferred upon the executors merely a naked power of sale. I shall refer to but few of them.
In Brengel v. O'Toole, 103 N.J. Eq. 339, it was held that where a will gives the executor a naked power to sell landwithout further duties except to distribute the proceeds, devisees under the will are entitled to retain possession pending sale. In that case Mr. Justice Lloyd, speaking for the Court of Errors and Appeals (at p. 342), said, "By the will a naked power to sell was given to the executor. He had no further duties to perform except to distribute the proceeds to the persons named." Also that, "* * * the obvious intent of the testatrix was to give to the specified relatives the property and the direction to the executor to sell and distribute its avails was simply the method by which this intent should be carried into effect." And that at all events the residuary clause of the will devised the lands in question to named devisees subject only to the power of sale in the executors.
By the thirteenth unnumbered paragraph of the Appleby will the testator directs that "the net rentals or income as well as the proceeds from the sale of my real and personal *Page 83 
property" be divided among his widow and three sons in specific proportions somewhat different from that to which they would have been entitled under the law of descent and distribution in case of intestacy; and in the event of the death of any one of the sons before April 1st, 1946, the share of the son so dying is to go to the survivors. This is a clear indication that the testator did not intend the succession of the real estate to be governed by the law of descent, and here is an implied power in the executors to collect rents, pay carrying charges and distribute the net rents during the lives of the beneficiaries, and an express power to distribute the proceeds upon sale after April 1st, 1946. There is also an implied devise of these properties in trust to the executors, and title thereto vested in them of necessity. Otherwise, that is, if title vested in the children subject to the dower right of the widow as claimed by the respondents, and subject to the power of sale to be exercised after April 1st, 1946, they could have conveyed their title to a third person and thus have defeated the whole scheme and purpose of the will. It will be readily seen that the executors, who were also named trustees, have "further duties" than mere powers of sale. They were charged with the duty of collecting rents, managing the properties, paying carrying charges and distributing the net income in monthly installments. The assumption of these duties by one of the executors, to the exclusion of the others, prompted the filing of the bill in this cause and the appointment of substituted trustees.
Necessary implication is equivalent to expression. Boylan
ads. Meeker, 28 N.J. Law 274, 298. In that case it was held that the executors take such an interest in the lands as is necessary to enable them to execute the powers and perform the duties conferred upon them, and that such interest may be given by express words or by implication.
In Fidelity-Philadelphia Trust Co. v. Harloff, 133 N.J. Eq. 44,
a reversionary interest in land was involved, such reversion arising out of the unexpected failure of issue of the life tenant. It was held that the will gave merely a naked power of sale.
In Brearley v. Brearley, supra, the power of sale was for a *Page 84 
limited purpose only, and it was held that that purpose having been satisfied out of the personal estate, the power was at an end and title to the lands vested in the heirs. The case is clearly distinguishable from the instant case as it is evident that there was no purpose of the will or of the testator expressed therein which required the exercise of the power of sale or the implied power to collect and distribute the rents and profits, and the proceeds of the sale when made, while here there was no power of sale in the executors and trustees with respect to the five parcels of real estate here involved until after April 1st, 1946. But in the meantime the management of the properties, the collection of rents, c., and their distribution, devolved upon the trustees and they were expressly directed to "hold intact" said properties. This they could not do if they were subject to execution and sale under a judgment against one or more of the heirs — an eventuality which the testator obviously intended to guard against. Such a sale would indeed defeat the very restriction upon alienation and the intention of the testator.
In Boylan ads. Meeker, supra, Mr. Justice Whelpley (at p.300), speaking for the Supreme Court, in commenting on theBrearley Case, said:
"In the first place, the evident desire of the Chancellor in that case was to go to the verge of the law to prevent the vesting of any estate in the lands in the executors, which would have kept the two children out of their whole estate, * * * until the death of their stepmother. It was emphatically a hardcase." (Italics mine.)
Mr. Justice Whelpley cited and quoted from Oates ex dem.Markham v. Cook, 3 Burr. 1686, in which Yates, J., said, "* * * the estate (in the executors) must be co-extensive with the charges; that when annuities were charged upon the real estate the legal estate must pass." In the Boylan Case only the question of possession was involved, and it was held that the right to possession was in the executors and not the heirs — that they could not execute the power of management, renting, insuring, c., of the real estate without possession. So here. The income from the five properties directed to be held by the executors, while not to be distributed as annuities, *Page 85 
was, nevertheless, to be distributed among the beneficiaries monthly and is analogous to the annuities referred to in Oates
v. Cook, supra.
In Scarborough v. Scarborough, supra, the use of the words "preserve," "trustees," "executors or trustees" was considered significant and evidential of an intention to create a trust. So here the use of the words "hold intact," the appointment of "executors and trustees," and the direction for the monthlydistribution of the net rentals or income, are likewise evidential of an intention to create a trust embracing these five properties as well as the proceeds of the sale of other real estate and personal property. As already stated, the income from these properties was to be distributed in specified proportions monthly; but an additional trust was also set up, the corpus of which was to consist of 34% of the proceeds of the sale of these five properties and of any other real or personal estate sold; but this separate trust was not to come into existence until the five properties here involved were sold. If these five properties were not held in trust by the executors and trustees for the period as directed, the clear intention of the testator to create this separate trust would be defeated.
A case practically on all fours with the instant case is that of Crane v. Bolles, supra. It was there held that where a will imperatively required the executors thereof to sell real estate in fee after a short time, and during that time to control the property by leasing it, collecting the rents, paying the taxes, insurance and repairs, and incidental expenses in its management, and made no other disposition of the property, a fee vested in the executors in trust for the purposes aforesaid. That is exactly the situation here except that the executors here were to hold the properties mentioned for a longer period of time than that specified in Crane v. Bolles. The comment of Chancellor McGill (at pp. 378 et seq.), too lengthy for repetition here, is, nevertheless, quite apt and might well be paraphrased to fit the present issue. There is no doubt but that here the testator intended that the real estate should be sold at all events after the expiration of the period limited in the will. There was discretion as to the time of sale thereafter, but no discretion as to the fact of *Page 86 
sale. Such sale was imperative, and a possibility of the executors' failure to sell within a reasonable time after April 1st, 1946, is not contemplated, nor is there any disposition of the properties themselves — only of the proceeds.
In Zabriskie v. Morris and Essex Railroad Co., supra, it was held that a trust to sell or improve lands; to invest and re-invest the proceeds; to collect rents and income; to pay taxes, assessments, commissions and other annual expenses and charges; to pay over the net income, and to divide the estate, vests a fee-simple title in the designated trustees. Chancellor Runyon's comment (at p. 24), is also quite apt here.
In Lindley v. O'Reilly, supra, the will contained no devise to the executor, in express words, nor any express grant of power to sell lands, but it was held that where a testator, in the disposition of his estate, imposes on the executor trusts to be executed or duties to be performed which require for their execution or performance an estate in his lands or a power of sale, the executor will take by implication such an estate or power as will enable him to execute the trusts or perform the duties devolved upon him. Mr. Justice Depue, speaking for the Court of Errors and Appeals (at p. 646), quoting from 1 Lewinon Trusts (8th ed.) 214, said:
"If a testator simply appoints his executor and trustee, it seems the latter word is not so exclusively applied to real estate as to carry by implication a devise of the testator's freehold; but if the testator directs certain acts to be done by the trustee or by the executor, which belong to the owner of the freehold, or which require that the trustee or executor should have dominion over the real estate, such a devise will be implied."
In Federal Trust Co. v. Ost, supra, Vice-Chancellor Stein (at p. 50), said:
"The duties of the trustee are active ones. It is not only tohold the trust property but also to make distribution of income. This necessarily involves the management of real estate, the collection of rents and the distribution * * * of the net rental yield. * * * A devise to the executors upon such activetrusts necessarily is a devise of the legal title. The entire scheme of the will, the present distribution of *Page 87 income and the postponement of the distribution of corpus untilthe occurrence of a stated event, clearly indicate and accomplish a present vesting of the legal title in the trustee, there remaining in the beneficiaries only the equitable use or interest. * * * express words vesting the fee need not appear in the will. It is enough if the intention to confer the fee can be gathered from the will or that such result is reasonably necessary to make effective the powers expressly conferred on the trustee." (Italics mine.)
See, also, Traphagen v. Levy, supra; Perry on Trusts (3ded.), § 315; Berrien v. Berrien, supra.
In my judgment there was here also an equitable conversion of testator's real estate into personalty immediately upon his death. Wurts' Executors v. Page, 19 N.J. Eq. 365; Cook'sExecutor v. Cook's Administrator, 20 N.J. Eq. 375; Triplett v.Ivins, 93 N.J. Eq. 202; Beck v. Dennis, 128 N.J. Eq. 128.
I have concluded that the legal title to the five parcels of real estate here involved is in the surviving substituted trustee and that it is not subject to execution, levy and sale under a judgment at law. The advertised sheriff's sales will, therefore, be permanently enjoined pursuant to the prayer of the petition and I will advise a decree accordingly. *Page 88