The substituted trustee's final account has been filed, audited and found mathematically correct. In connection therewith two motions are now before the court. The first is for a decree approving the account and fixing the commissions of the substituted trustee and fees of counsel. The second is a motion for distribution of the remaining assets of the estate in kind. The substituted trustee asks for commissions at the rate of 5% upon both corpus, the present value of which is claimed by him to be $514,000, less a credit of $5,677.54, being 3% commissions allowed on balance of corpus amounting to $189,251.21, as shown by the sixth intermediate trustee's account, and 5% on income of $100,198.24 as shown by the final account.
Counsel for the assignees of the beneficiaries of this estate opposes these allowances. For a complete understanding of the issues presented on this application a short resume of the history of this estate is requisite. *Page 10 
The testator, T. Frank Appleby, a resident of Asbury Park, Monmouth County, New Jersey, died at Baltimore, Maryland, on December 15th, 1924, leaving a last will and testament dated the day before his death, in which he appointed his widow and three sons "my executors and trustees of this my last will and testament." Upon the probate of the will the named executors and trustees qualified and thereafter functioned as such until January 21st, 1936, when by the final decree in this cause they were "relieved and discharged from all further duties of their said office of trustee, except the duties of accounting, c.," and two individuals were thereupon and thereby "appointed trustees in the place and stead of" the trustees appointed by the will, naming them, "to execute the trust created by the last will and testament of T. Frank Appleby, deceased." Upon the death of one of the substituted trustees on November 11th, 1938, W. Harold Warren of Asbury Park, New Jersey, was appointed in his place and stead; and upon the death of the other substituted trustee, on June 16th, 1944, Mr. Warren became the sole surviving substituted trustee, and has been acting as such since that time.
Upon the filing of a bill in this cause a receiver pendentelite was appointed and upon the appointment of the substituted trustees in January, 1936, he accounted and turned over to the substituted trustees the balance of the estate assets in his hands at that time. The value of this estate at the time of testator's death was said to have been approximately $1,000,000, but at the time of the appointment of the substituted trustees in January, 1936, most of the personal estate had been distributed or dissipated so that the entire remaining assets consisted of eight parcels of real estate in Asbury Park, New Jersey, and cash amounting to $2,358.67, all of which was turned over to the substituted trustees by the receiver pendente lite. The cash item represented the balance of income in the receiver's hands, and in the various accounts of the substituted trustees thereafter filed, the corpus of the estate, consisting entirely of real estate, was listed at the then inventory value as follows: *Page 11 
Nov. 23, 1937 — Ist Intermediate Account ...................... $316,658.87
Jan. 31, 1939 — 2nd Intermediate Account (Inventory value of
 real estate not shown — income only accounted for)
Jan. 6, 1940 — 3rd Intermediate Account ....................... 215,024.39
 (This figure was arrived at by deducting $79,000,
 representing the value of two parcels of real estate, lost by
 the trustees through mortgage foreclosures, and income
 adjustments amounting to $22,634.48)
Dec. 11, 1941 — 4th Intermediate Account ...................... 215,024.39
Dec. 17, 1942 — 5th Intermediate Account ...................... 215,024.39
July 26, 1944 — 6th Intermediate Account ...................... 189,251.21
 (There is no explanation in this account of the reduction in
 the value of the corpus from the value of $215,024.39 stated
 in the preceding account)
Jan. 17, 1946 — 7th Intermediate Account ...................... 187,553.21
 (The difference in the value as stated in this and the last
 preceding account is due to adjustment between income and
 corpus, amounting to $1,698, as shown in item "Third" of that
 account)
Feb. 5, 1947 — 8th and Final Trustee's Account ................ 482,720.34
 (This figure is apparently arrived at by listing five parcels
 of real estate at the "present market value" of $514,000 less
 a credit of $31,279.66 due to income from corpus. No
 explanation of the stated market value of the real estate is
 given. In the "Fourth" item of the account the corpus of the
 estate is first shown as consisting of four parcels of real
 estate claimed to have had a value of $217,658.87 at the time
 of the appointment of the substituted trustees. Whether this
 time relates to the original appointment of the substituted
 trustees in 1936 or the appointment of the present accountant
 in November, 1938, or the date when he became sole surviving
 substituted trustee, June 16, 1944, is not indicated.
 However, at the oral argument on this application it was
 stipulated by counsel that for the purpose of fixing
 trustee's commissions the value of the corpus should be
 considered as $500,000)

From the foregoing statement it will appear that there were wide discrepancies among the valuations of corpus in the various accounts, with no logical explanation thereof. Thecorpus of the estate to-day consists of exactly what it was at the time of the filing of the third intermediate account. It consists of the identical parcels of real estate owned by the trustees at the time. If the corpus has a present value of $500,000 as stipulated by the counsel for the parties, the increased value is not in any measure due to the administration *Page 12 
or activities of the substituted trustees. It reflects "increased market value of estate assets," (In re Bristle, 138 N.J. Eq. 476) which I consider inflated and abnormal. The fact that these properties are still owned by the estate is due in no sense to the business acumen of the substituted trustees, but can be attributed solely to the foresight of the testator who provided in his will that these properties should not be sold until after April 1st, 1946.
It appears from the proofs before me that within the last two years the assignees of the beneficiaries named in testator's will purchased all of those interests for the total sum of $13,866.54, a figure approximating the inventory value of the corpus upon the appointment of the original substituted trustees.
While it is undoubtedly the rule that the rate of commission is to be calculated upon the value of the principal at the time the compensation of the trustees is fixed (In re Thurston, 104 N.J. Eq. 395; In re Linn, 124 N.J. Eq. 65; In re Herbert, 130 N.J. Eq. 595; In re Sparks, 135 N.J. Eq. 300; Restatement, Trusts 742 §242), where the account shows a substantial increase in the value of the corpus in no sense attributable to the efforts of the trustees, the rate of the commission allowed should, in my judgment, be lower than if calculated upon inventory values. In any event, all that the trustee is entitled to is just compensation for his services. He is entitled to no more and should be allowed no less. The statute R.S. 3:11-2 provides that on estates the value of which exceeds $50,000, the rate of commissions on corpus shall not exceed 5%, but the actual rate at which such commissions are calculated is discretionary with the court. Gates v. Plainfield Trust Co., 123 N.J. Eq. 519.
The statute above referred to also fixes the commissions of trustees, c., on income at 5%, and this they may take without any allowance by the court. However, where there is a question as to the exact amount of the income it is safer for the trustee to defer taking his commissions on income until the amount of that income is definitely determined by the court. Here, although the amount of income upon which the trustees ask commissions is claimed to be in excess of $100,000, the *Page 13 
actual amount of income upon which the substituted trustee is presently entitled to commissions at 5%, is $87,904.46, and the decree to be advised herein will provide for payment of commissions at the rate of 5% on that amount.
No commissions on corpus were ever allowed or paid to the original trustees but the record shows that, as already stated, commissions at the rate of 3% on $189,251.21 were allowed the substituted trustees on the passing of the sixth intermediate account, and the amount of those commissions must be deducted from whatever additional allowance is now made. And in fixing the rate of commissions now to be allowed on corpus, it must also be borne in mind that the present surviving substituted trustee and his immediate predecessor in office has, since January, 1939, received an allowance of $40 a month for incidental office expenses which ordinarily would be paid by him out of his commissions and which expenses would ordinarily be considered by the court in fixing the rate of his commissions. The payments made pursuant to this arrangement are in excess of $5,500.
It is true that the administration of this trust estate by the substituted trustees has extended over a period of more than 11 years, but the principal duties of these trustees consisted in renting and managing the real estate in Asbury Park constituting the estate corpus. This administration has been essentially a real estate management and such management is ordinarily obtainable at a charge of 5% on rents collected. In this case there have been the following payments of commission on income at the rate of 5%:
 December 2, 1937 .............................. $2,467.58
 January 26, 1939 .............................. 1,738.99
 July 17, 1940 ................................. 2,057.24
 December 18, 1941 ............................. 2,182.04
 December 31, 1942 ............................. 1,704.38
 September 21, 1944 ............................ 2,428.86
 5% Commission on this accounting .............. 4,395.22
 __________
 Total ....................................... $16,974.31

To this amount must be added the sum of $5,500 in management fees already paid, which brings the total compensation to the trustees for management to date to $22,474.31. *Page 14 
The administration of this estate has been supervised by me during all the period of the service of the substituted trustees and I believe I am thoroughly familiar with what they have done and the services for which they are entitled to compensation. Considering all of the facts above stated, I believe that commissions at the rate of 2 1/2% upon the stipulated value of the corpus at this time, namely $500,000, or $12,500 — is all that can be justly allowed. That, in addition to the commissions already allowed on income and for management fees, the sum total of which is $34,974.31, will be adequate compensation to the substituted trustees for all services performed by them. From the sum of $12,500 now to be allowed as commissions on corpus there must be deducted the sum of $5,677.54, paid as commissions oncorpus upon the passing of the sixth intermediate account. This will leave a balance of commissions on corpus, amounting to $6,822.46, which sum is to be apportioned among and paid to the substituted trustees or their estates in proportion to the time served by each.
We now come to the question of counsel fees. During the eight and one-half year period from January, 1936, to June, 1944, counsel fees aggregating $11,950 were paid to counsel for the trustees. That was at the rate of approximately $1,400 per year. Since June, 1944, the present counsel for the sole surviving substituted trustee has acted in that capacity. He has already received two allowances, one of $500 and one of $2,000, making a total of $2,500 on account of his services which have covered a period of slightly less than three years. He is now asking for an additional counsel fee of $5,000. This, in my judgment, is excessive. The duties of counsel for the trustee during this period have been no more onerous than in the preceding eight and one-half years, except that in the closing of this estate and in supervising the trustee's distribution he will have some added duties to perform. In the recent litigation which was disposed of pursuant to my opinion reported in 139 N.J. Eq. 73, he took no part nor has he been concerned in anything but the routine administration of the trustee. In view of these circumstances I think an additional allowance of $2,500 at this time is all *Page 15 
that is justified, and such allowance will be made. This brings his total allowances to $5,000 or an average of approximately $1,700 per year.
I will advise a decree approving the trustee's final account and fixing the allowances as above stated.
There is no doubt about the right of the assignees of the beneficiaries of this estate to a distribution in kind, but, in my judgment, there should be a separate decree directing such distribution, and the trustee will make such distribution by executing and delivering to the assignees of the beneficiaries the usual trustee's deed, and by paying over to them whatever cash remains in his hands after payment of the fees herein allowed. *Page 16