Ione G. Tucker, Appellee, *vs.* Ralph A. Countryman *et al.*, Appellants.

*Opinion filed January 22, 1953—Rehearing denied March 24, 1953.*

SEARS & STREIT, of Chicago, EUGENE DONNELLY, CLARK H. COUNTRYMAN, JAY W. PUGH, and JOHN A. LEIFHEIT, guardian *ad litem,* all of De Kalb, (BARNABAS F. SEARS, LLOYD J. TYLER, JR., and DAVID H. ARMSTRONG, of counsel,) for appellants.

FRANCIS E. CASH, and HARRY W. McEWEN, both of De Kalb, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff, Ione G. Tucker, instituted a partition proceeding in which she sought to have an alleged trust, set forth in the will of Lewis Hendrickson, declared void for uncertainty; to have the cloud on the title, created by the alleged trust, removed; to have the rights and title of the parties to certain real property of the decedent, Lewis

Hendrickson, determined; and to have a sale of the property ordered and the proceeds distributed in accordance with the respective interests of the parties. The circuit court of De Kalb County granted plaintiff the relief prayed for, and held that plaintiff and defendant Lester Hendrickson were each entitled to an undivided half interest in the real property of the decedent, Lewis Hendrickson, in accordance with the laws of descent and distribution.

The sole inquiry on this appeal prosecuted by defendants is whether a valid trust was created by the terms and provisions of the will of Lewis Hendrickson.

Lewis Hendrickson made his will on March 10, 1917, at which time he owned a 220-acre farm in De Kalb County. He died 10 weeks later, on May 23, 1917, and left surviving a widow, Matilda T. Hendrickson, a son, Lester Hendrickson, and two daughters, Ione G. Tucker and Blanche Hendrickson. The will of Lewis Hendrickson was probated, and on September 2, 1919, the executor was discharged and the estate closed.

The widow took possession of the farm upon the death of the testator, and retained possession until 1935, when she executed a quitclaim deed to Ione G. Tucker and Lester Hendrickson, who both went into possession of the premises which they still retain. The widow died on April 15, 1951, with plaintiff, Ione G. Tucker, and defendant Lester Hendrickson as her only surviving heirs, inasmuch as her other daughter, Blanche Hendrickson, had died on January 26, 1920. On August 25, 1951, plaintiff filed suit for partition of the farm, alleging that the trust set forth in the second paragraph of the will of Lewis Hendrickson was void for uncertainty and created a cloud on the title of the farm, which the court should properly remove.

The will of Lewis Hendrickson, in which the alleged trust is set forth, consists of three main paragraphs. The first directs the payment of just debts and funeral expenses of the deceased; the second devises all of the testator's

property, real and personal, to Ralph A. Countryman, in trust, for certain persons and with certain directions and provisions which will be hereinafter analyzed; and the third appoints Ralph A. Countryman as executor of the will. There is no residuary clause in the will.

The controverted second paragraph of the will is composed of three subparagraphs. The first of these subparagraphs gives all of the testator's property, real and personal, to Ralph A. Countryman, in trust, and directs him to lease all of the real estate for a reasonable rent, and to pay the net income therefrom, after deducting certain expenses, together with the net income from the testator's personal estate, to the testator's wife, Matilda, for life, such provision to be in lieu of dower and widow's award.

This first subparagraph further provides that, upon the death of the testator's wife, the trustee is to convey to Ione Hendrickson Tucker, Blanche Hendrickson, and Lester Hendrickson in equal portions, share and share alike, all of the personal property held by the trustee. The trustee is also directed in this subparagraph to lease certain lands described therein, amounting to some 80 acres, and to pay the net income therefrom to testator's son, Lester, for life.

The second subparagraph of this second main paragraph of the will provides that the trustee lease certain lands described therein and pay the net income therefrom to the testator's daughters, Ione Hendrickson Tucker and Blanche Hendrickson, for life. Inasmuch as the legal description creates, according to plaintiff's contention, certain ambiguities and uncertainties in the trust *res*, it shall be set out herein: "the West Half (W½) of the Northeast Quarter (NE¼) of the Northeast Quarter (NE¼) and part of the Northwest Quarter (NW¼) of Section Thirty Three."

The property as described includes a tract of 20 acres and another tract of possibly 20 acres, assuming it refers to the "part" of the area which the testator owned, as defendants suggest. However, neither this subparagraph,

nor any other provision in the will refers to, or gives the trustee any directions concerning, the disposition of the net income or of the fee of the remaining 100 acres of the farm, to which the trustee had legal title. The legal description of the omitted premises involves: "The West Half (W½) of the Northeast Quarter (NE¼) and the East Half (E½) of the Northeast Quarter (NE¼) of the Northeast Quarter (NE¼) of Section 33, Township 40 North, Range 3, East of the 3rd Principal Meridian, De Kalb County, Illinois."

The third subparagraph of this second main paragraph of the will purports to dispose of the income and the fee under numerous contingencies. It directs that "if either of my said children shall die without issue, then that portion or share of said net income from my said real estate * * * shall be paid to the survivor or survivors of my said children." There is no disposition, however, of the fee if the testator's children die without issue surviving them. On the other hand, if either of said children die with issue surviving, "the trustee * * * shall convey to the child or children of my deceased child the fee simple in the real estate from which my said child shall have been receiving the net income." It is further provided in this third subparagraph that if said testator's child shall have been receiving an "undivided share or portion of the net income" from testator's real estate then the child or children of such deceased child of the testator shall receive an undivided interest in fee in testator's real estate "as tenant in common with my said trustee." This subparagraph further specifies that "said interest as tenant in common with such trustee shall bear the same proportion to the whole of said real estate as the portion of the income which my deceased child shall have been receiving shall bear to the total income from my said real estate."

The third and last main paragraph of the will appoints Ralph Countryman as trustee and executor of the will.

The defendant trustee, however, at no time took or had possession of the premises, nor leased it, nor performed any trust duties from the date of the testator's death in 1917 to the present time.

The circuit court held the trust to be void because of the vagueness, ambiguities and omissions in the second paragraph of the will, whereby it was not possible to determine the testator's intent with reference to the trust. Hence, the court found that Lewis Hendrickson died intestate as to all his real property, to which Lester Hendrickson and Ione G. Tucker were each entitled to an undivided half interest. The court thereupon ordered partition of the premises, or a sale, if the property was incapable of being partitioned, with a distribution of the proceeds according to the interests of the parties determined accordingly.

In adjudicating whether the circuit court erred in its disposition of this cause, and whether partition should properly have been ordered, we must determine whether a valid trust is created under the terms of the will of Lewis Hendrickson. That determination is clearly within the jurisdiction of the court under section 24 of the Partition Act, (Ill. Rev. Stat. 1949, chap. 106, par. 67,) where it is provided that in a partition proceeding the court may investigate and determine all questions of controverted title, and remove clouds upon the titles of the premises sought to be partitioned. Moreover, the determination of the validity of this testamentary trust does not involve a premature adjudication of interests which have not yet accrued, as defendants suggest, since the trust, if valid, would be presently in operation and effect, and would control the rights of the parties to the property involved in this litigation.

To constitute a valid testamentary trust, it is essential that its material terms are certain. These terms include: the subject matter or property embraced within the trust; the beneficiaries; the nature and quantity of the interest which they are to have; and the manner in which the trust

is to be performed. If any of these elements is not described within certainty, no trust is created. *Marble* v. *Marble,* 304 Ill. 229, 235; *Orr* v. *Yates,* 209 Ill. 222; *Snyder* v. *Snyder,* 280 Ill. 467.

The court must ascertain the intention of the testator with reference to these essential elements of a trust from the four corners of the will. (*Richardson* v. *Roney,* 382 Ill. 528, 532.) It is not the province of the court to surmise that the testator may have preferred a different will, nor to supply omissions, nor even to give legal effect to ambiguous language on the ground that the testator intended it to have some meaning. We shall endeavor, therefore, to determine from the will itself the intent of Lewis Hendrickson with reference to this trust, and whether that intent can be legally effectuated.

The purported trust herein was set forth in the three subparagraphs of the second main paragraph of the will. According to our interpretation of the provisions, the testator intended to include as the subject matter of the trust all of his real and personal property. This conclusion is predicated primarily upon the facts that there are no other dispositive clauses in the will, there is no residuary clause, and, most important, the testator specifically conveyed all his property, real and personal, to the trustee. That disposition by the testator directly contradicts defendants' unique contention, rejected also by the trial court, that the testator's expressed intent was to dispose of only a portion of his estate in this trust, and to leave the greater portion of his real estate as intestate property. What was the purpose of giving all the real estate to the trustee if there was no intention to include it under the trust? If the testator merely intended that part of his property should pass under the laws of intestacy, there was no need to convey that property to the trustee.

The case of *First Trust and Savings Bank* v. *Olson,* 353 Ill. 206, is clearly distinguishable from the one before

us. In the *Olson case* the testator had devised all the rest, residue and remainder of his estate then owned or thereafter acquired, in trust, to pay the income to a certain nephew for life, and upon the death of the life beneficiary, one third of the trust *corpus* was devised to a certain person with certain limitations over in the event of his death before termination of the preceding life estate. The will there contained an express direction that the testator did not desire to die intestate, but it completely failed to make any ultimate disposition of the two thirds of the fee of the trust *corpus*. The court in that case held that it could not create a devise by implication and that the undisposed of property would have to go as intestate property, and it also held that the trustee could not claim an interest in the undisposed-of remainder. The issue was not raised therein as to whether or not the trust failed as a whole because of the failure to dispose of the entirety of the estate. Since the issue in this case is primarily as to when an entire trust fails because of a failure of a portion of it, the *Olson case* is not a precedent for our problem, since no such issue was there presented to the court.

Our interpretation that the testator intended to include all of his property in the trust is further corroborated by other provisions and phraseology in the will: The fact that he completely disposed of the income and corpus of all his personal property; the fact that he directed the trustee to lease all his real estate and pay the net income therefrom, together with the income from his personal estate, to his wife during her life; the fact that the testator provided that in the event of the death of testator's children without issue the share of income from the real estate going to such deceased child shall go to the surviving children.

Moreover, this interpretation of the testator's intention with reference to the trust property, predicated upon the terms of the will itself, is further enhanced by the presumption that when a man dies testate he intended by his will

to dispose of all of his property and leave no part of his estate intestate. *Chicago Title and Trust Co.* v. *City of Waukegan,* 333 Ill. 577.

Notwithstanding Lewis Hendrickson's testamentary intent to include all of his real property within the subject matter of this trust, the trust as transcribed by the scrivener failed to contain directions to the trustee for the disposition of both the income and fee of 100 acres of the farm to which the trustee had the legal title.

As hereinbefore noted, the alleged trust provided that the trustee lease all of the real estate and pay the income to the testator's wife for life. On her death, however, the trustee was directed to lease a certain designated portion, amounting to 80 acres, and pay the income to his son, Lester. The trustee was also directed to lease another portion of the farm and pay the net income to his daughters for life. According to the legal description of this latter portion, however, it included only a tract containing some 20 acres and another tract which, by the application of extrinsic evidence, could be identified as including another 20 acres, thereby omitting the remaining 100 acres of testator's farm, and only giving the daughters half the income from approximately 20 or possibly 40 acres.

It is apparent from the legal description of this portion of the farm to be leased for the benefit of the testator's daughters that the scrivener omitted three words therefrom. For had the legal description contained the words, "the Northeast Quarter," all of the testator's real estate would have been included. As transcribed in the will the property is designated as "the West Half (W½) of the Northeast Quarter (NE¼) of the Northeast Quarter (NE¼)." Had the description read "the West Half (W½) of the Northeast Quarter (NE¼), the Northeast Quarter (NE¼) of the Northeast Quarter (NE¼)," it would have encompassed the rest of testator's real property held by the trustee.

In addition to this ambiguity and uncertainty created by the fact that all the real property was conveyed to the trustee, yet he was only given directions to lease and dispose of less than half of it after the death of the widow, with the remaining 100 acres apparently being held in suspension as to the disposition of income and fee, there are other provisions in the will which further enhance the uncertainty, both as to the trust *res* and the interest of the beneficiaries.

Of the limited property designated to be leased after the death of the widow, the trust merely provides that the income therefrom shall be distributed to the testator's children, but there are no directions as to the disposition of the fee of such property on the death of the testator's children without issue. It cannot be determined from the terms of the purported trust whether the fee of the property from which the testator's child was enjoying the income should go to the other surviving children or to the issue of the testator's other children, or should merely be held at the pleasure of the trustee.

In light of these incongruities and uncertainties, both as to the subject of the trust and as to the nature of the interest of the beneficiaries, it is evident that the essential elements of a valid trust have not been set forth with certainty in the second paragraph of the will of Lewis Hendrickson.

In *Barrett* v. *Barrett,* 255 Ill. 332, the court rejected the argument, similar to that interposed by the defendants herein, that part of a trust should be sustained even though some provisions were void, and stated, at page 338, "We think it obvious, however, from the language of the entire will, that the testator had in his mind when he executed his will, a plan for the disposition of all his estate and not for the creation therein only of certain life estates, and that for the courts to hold that his plan or scheme of disposition or division must fail in so far as he sought to dispose of the *corpus* of the estate but could be sustained as

to the life estates would be to make a new will for the testator, which the courts are powerless to do."

That language is particularly applicable to the instant case where defendants have urged that the provisions respecting the life estates should be recognized, irrespective of the provisions involving the disposition of the fee to the surviving issue of testator's children.

In *Beatty* v. *Stanley,* 298 Ill. 444, the court also refused to enforce the valid portions of a will in which one portion violated the rule against perpetuities, on the ground that over half of the estate would constitute intestate property, and to sustain the valid parts of the will would make a distribution of the estate never intended by the testator.

In the case at bar the will of Lewis Hendrickson contains one entire scheme of distribution. Although his intent was not effectuated, because of the omissions, ambiguities and uncertainties created in transcribing the will, that testamentary intent was to dispose of all his property by a trust wherein his wife would be given all the income from the property during her life, and on her death the personalty would be divided between his children, who would also be entitled to the income from designated portions of the farm, which farm would ultimately be distributed among the issue of testator's children. To give effect to only a portion of this plan whereby less than half of the real estate would be disposed of, and then only with reference to the income, clearly does violence to the testator's plan of disposition. In operation, this interpretation would mean that the testator's son, Lester, would receive not only the income from the 80 designated acres, but would also be entitled to his intestate share of the omitted 100 acres—a result obviously contrary to the testator's intent, and to the determinations of the courts in the *Barrett* and *Stanley* cases.

On the basis of the analysis presented herein, it is our judgment that the circuit court committed no error in ad-

judging that the alleged testamentary trust set forth in the will of Lewis Hendrickson was void, and in removing the cloud on the title of the property, created by such alleged trust. The circuit court correctly found that plaintiff, Ione G. Tucker, and defendant Lester Hendrickson are each entitled to an undivided half interest in the entire 220-acre farm under the statute of descent, and properly ordered partition, or a sale of the premises, if it cannot be partioned. Therefore, the decree entered by that court is affirmed.

*Decree affirmed.*

Mr. JUSTICE FULTON took no part in the consideration or decision of this case.