29 N.J. Super. 94 (1953)
101 A.2d 611
HARRY TOURIGIAN AND MITCHELL TOURIGIAN, EXECUTORS UNDER THE WILL OF MESROP TOURIGIAN, DECEASED, PLAINTIFFS,
v.
AGNES TOURIGIAN, INDIVIDUALLY AND AS GUARDIAN OF LORA TOURIGIAN, MICHAEL TOURIGIAN AND ARAXIE TOURIGIAN, MINORS, HARRY TOURIGIAN, MITCHELL TOURIGIAN, GRACE M. SUNY, VICTORIA BERGES, LORA TOURIGIAN, MINOR, MICHAEL TOURIGIAN, MINOR, AND ARAXIE TOURIGIAN, MINOR, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 16, 1953.
*96 Mr. Daniel De Brier, attorney for plaintiffs.
Mr. George Warren, guardian ad litem, pro se.
HANEMAN, J.S.C.
Plaintiffs herein seek the construction of the will of Mesrop Tourigian, who died December 5, 1952, leaving a last will and testament dated January 10, 1947, which was duly admitted to probate in the Atlantic County Surrogate's Court on December 16, 1952.
At the time of his death he left him surviving a widow, Agnes, and seven children. Four of said children, all adults, were born of a prior marriage, and three of the children, all minors, were born of his marriage to Agnes.
The question herein raised is as follows: Does paragraph Third of testator's will impose a trust upon the three-fifths share of his estate therein devised and bequeathed?
The pertinent sections of the will are as follows:
"SECOND: All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature and wheresoever situate, I give, devise and bequeath as follows: Three-fifths (3/5) to my beloved wife, Agnes Mangigian Tourigian. The remaining *97 two-fifths (2/5) to be divided among all my children, in equal shares between them.
The word or words `children' or `all my children,' as used in this Will, shall apply to the children born of my present marriage and also the children born of any previous marriage.
THIRD: It is my desire and I hereby direct my wife, Agnes Mangigian Tourigian, to provide a suitable and adequate home, support, maintenance, care and education for our minor children out of her three-fifths (3/5) share of my estate. My wife shall maintain for herself and my minor children, a home, in such circumstances and with such environment as shall be compatible with their present status in life and manner of living. Should my wife's share be insufficient to provide and care for my minor children, as stated above, then and in that event, my wife is herein authorized to obtain whatever moneys may be necessary for this purpose from my minor children's share of my estate, provided she shall obtain, on application, the approval of a Court of competent jurisdiction. My wife shall continue to provide for my minor children until each of them shall reach the age of twenty-one (21) years, or, unless of course, they shall die prior to that time; or shall marry; or shall establish their own home or household elsewhere.
Should my beloved wife die while carrying out the duties imposed upon her under this paragraph `THIRD,' then and in that event, I direct that my son, Harry Tourigian, shall carry out these duties, as substituted guardian.

* * * * * * * *
SIXTH: I nominate, constitute and appoint my beloved wife, Agnes Mangigian Tourigian, the Guardian of my infant children during their respective minorities, as stated in `THIRD' above, to serve without bond in this State or in any other State. Should she predecease me, or die during the minority of any of our children, then I direct that my beloved son, Harry Tourigian, be appointed as Guardian of my minor children, in her place and stead, to serve without bond in this State or in any other State." (Underscoring supplied.)
Plaintiffs argue that it was not the testator's intent to impress a trust on a three-fifths share of his estate devised and bequeathed under paragraph Second to his widow.
If a contrary intent is to be found, it must be by sections of the will other than paragraph Second, and particularly by virtue of paragraph Third.
Plaintiffs rationalize, first, that the use of the word "desire" in paragraph Third is a precatory and not a mandatory expression, and that in the light of the other provisions of the will, there is insufficient evidence to give rise to an *98 intent to create a trust. They completely ignore the four words which directly succeed the word "desire," i.e., "and I hereby direct." It must be conceded that did the word "desire" stand alone and unqualified, the question of whether a moral or legal obligation resulted would have been pertinent. We have here, however, an express mandatory direction, and those cases construing the effect of precatory words are inapplicable.
Plaintiffs further argue that the intention gathered from the balance of said will demonstrates that it was not the testator's intent to impress a trust under paragraph Third, and that the failure of the testator to use the word "trust" and to appoint a named trustee, and the use of the words "substituted guardian" in paragraph Third, and "Guardian" in paragraph Sixth, mitigate against the construction sought by the guardian ad litem of the infant defendants.
It is academic that on the question of a construction of a will the court must give effect to the intent of the testator as ascertained from a consideration of the entire will. In re Armour's Estate, 11 N.J. 257 (1953); Dickerson v. Dickerson, 4 N.J. Super. 237 (App. Div. 1949).
In attempting to ascertain this intent, if the language of the will presents a solid foundation upon which the court can reasonably rely, it will be construed in favor of a just and reasonable disposition; and the predominant idea of the testator's mind, if apparent, will be heeded as against all doubtful and conflicting provisions which might of themselves defeat it. Gluckman v. Roberson, 116 N.J. Eq. 531 (E. & A. 1934). In the absence of an expressed intention to the contrary in construing a will, favor will be accorded to those beneficiaries who appear to be the natural or special objects of testator's bounty. It will not be presumed that the testator intended to discriminate between the natural objects of his bounty and a construction affecting equality, and the natural objects of the testator's bounty will be favored. Testamentary provisions for support are favored by law, and provisions for the support and education of dependent beneficiaries are to be liberally construed in favor *99 of such beneficiaries. In construing an ambiguous will, in the absence of an expressed intention to the contrary, the court will favor the testator's children and a provision for the support of the testator's children should receive the most favorable construction to accomplish the purpose intended. Byrne v. Byrne, 123 N.J. Eq. 6 (Ch. 1938), affirmed 124 N.J. Eq. 273 (E. & A. 1938).
In Hudson Trust Co. v. de Malignon, 140 N.J. Eq. 167 (E. & A. 1947), the court said:
"The predominant idea in the testator's mind `if apparent, is heeded as against all doubtful and conflicting provisions which might of themselves defeat it.' Johnson v. Haldane, 95 N.J. Eq. 404; Peer v. Jenkins, 102 N.J. Eq. 235; Fink v. Harder, 111 N.J. Eq. 439; Gluckman v. Roberson, 115 N.J. Eq. 522; affirmed in 116 N.J. Eq. 531; Camden Safe Deposit [& Trust] Co. v. Scott, 121 N.J. Eq. 366. While the decedent's will was not as carefully drawn as it might have been, nevertheless `the plain intent of the testator as disclosed by the language of his will, unless contrary to law, must govern.' Second National [Bank & Trust] Co. of Red Bank v. Borden, 113 N.J. Eq. 378, at pages 380 and 381; Bottomley v. Bottomley, 134 N.J. Eq. 279, at page 290."
See also Inman v. Inman, 125 N.J. Eq. 160 (E. & A. 1938).
It is true that no express words directing the creation of a trust or naming a trustee are to be found in the will. However, as the count said in Scarborough v. Scarborough, 134 N.J. Eq. 201 (Ch. 1943):
"Nevertheless, a testamentary trust may be found by implication where the intention of the testator to set up a trust is manifest, or testator's obvious purpose cannot be executed except through such an instrumentality, or the executors are given duties to be discharged beyond their ordinary functions as executors."
See also Appleby v. Appleby, 139 N.J. Eq. 73 (Ch. 1946); In re Thurston, 104 N.J. Eq. 395 (Prerog. Ct. 1929).
The directions to the widow were not mere indications of motive, they were directions evincing a mandatory purpose for which the share of testator's estate was devised and bequeathed to his widow.
*100 In Coffin v. Watson, 78 N.J. Eq. 307 (Ch. 1911), affirmed 79 N.J. Eq. 643 (E. & A. 1912), the court said as follows:
"Upon the question whether provisions for maintenance of children are trusts imposed on a parent where no trusts are declared in express terms, the general rule is that, if the language is sufficient to clearly express the intention that it should be held in trust for maintenance, the court will enforce the trust. 2 Pom. Eq. Juris., § 1012, and cases cited in notes. And where a bequest is made so that the legatee may use or dispose of the income for the benefit of himself and the maintenance or education of his children, a trust is in general created for the children in common with the interest of the parent. Id., citing Woods v. Woods, 1 My. & Cr. 401, and several other English cases. In a later case, In re Booth (1894), 2 Ch. 282, where a testator gave the residue of his estate to executors in trust (among other things), to pay the income to his wife `for her use and benefit and for the maintenance and education of my children,' it was held that the wife took the income subject to a trust for the maintenance and education of the children, and that the trust was not limited to children under 21 or unmarried."
See also Kidder's Ex'rs v. Kidder, 56 A. 154 (Ch. 1903); Leavy v. McDermott, 20 N.J. Super. 440 (Ch. 1952).
It is apparent that the testator here intended that the three-fifths share of his estate devised and bequeathed by paragraph Third should be for the benefit of his wife and children for the terms expressed therein. The natural objects of his bounty were both his wife and his children and he was especially interested in the support, maintenance, care and education of such children during their minority. This he exhibited by the very language of his will.
This conclusion is further strengthened by the unnumbered sub-paragraph under paragraph Third, which appoints his son "substituted guardian" to "carry out these duties," which he had directed his wife to carry out during her life. The use of the word "duties" exhibits an intention that the widow, during her life, was to be charged with an inflexible duty to use the share of the estate devised and bequeathed to her for the maintenance, support and care of herself and the minor children jointly, as well as for the education of such minor children. It negates a conclusion that she was given the absolute unfettered title to this share to be used *101 free from and untrammelled by any legal compulsory obligation to the minors. It follows not only from this expression that the widow is so personally charged, but that the fund is as well so bound.
The inept use of the word "guardian" does not show a contrary intent. By paragraph Sixth the testator appointed his widow as "guardian," and upon her death, his son Harry as substituted "guardian" for testator's minor children, to serve "without bond in this State or in any other State, as stated in Third above." This very phraseology demonstrates that the guardianship was to be of the property and not merely of the person of the minors. If a purpose were to be engrafted thereon to appoint solely a guardian of the person, the clause would have been redundant, since the surviving mother is the natural guardian of the person of her minor children and could not, without her consent, have been displaced. N.J.S. 3A:6-19. In addition, there is no requirement under the law that a guardian of the person of a minor must file a bond, but it is required that a trustee file a bond. We cannot ascribe a desire to restrict such appointment to a guardianship of the person alone, particularly as the instrument was patently prepared by one familiar generally with legal lexicography, even though the term "guardian" was here loosely and erroneously employed. It must follow, therefore, that both the widow and the son Harry were to be vested with title under paragraph Third as trustees for the widow's and minors' benefit.
In the sense here used, the word "guardian" is tantamount to "trustee." The designation of "guardian" must have been the use of mistaken nomenclature.
Particular words must always be considered in relation to their context. Child v. Orton, 119 N.J. Eq. 438 (Ch. 1936).
In Herbert v. Central Hanover Bank & Trust Co., 131 N.J. Eq. 330 (Ch. 1942), affirmed 132 N.J. Eq. 445 (E. & A. 1942), the court said:
"One of the general rules of construction of wills is that the words `are, in all cases, to receive a construction which will give *102 to every expression some effect, rather than one that will render any of the expressions inoperative' (Jarman, Twenty-four Rules of Construction, No. 16), `and words which it is obvious are mis-written may be corrected.' Ibid. No. 20. Swetland v. Swetland, 100 N.J. Eq. 196, 207. "There can be no doubt that it is within the power of the courts in construing a will to depart from its strict wording when that course is necessary to give effect to the intention of the testator.' Second National Bank and Trust Co. [of Red Bank] v. Borden, 113 N.J. Eq. 378, 383, and cases cited. And the court `for such purpose may mold or change the language of the will such as by rejecting superfluous, absurd or repugnant words or phrases, or restricting them in their application; by supplying omitted words or phrases; by transposing words, expressions or sentences; or by substituting one word or phrase for another.' 40 Cyc. 1399. The power to supply, substitute or transpose words, &c., includes, of course, the power to supply omitted punctuation marks. First Methodist Church of Vineland v. Pennock, 130 N.J. Eq. 452, 455. See Hawkins, Construction of Wills, Second American Edition, page 7 and note."
The word "guardian" where improperly used, has been held to connote the word "trustee."
In Arnold v. Arnold, 136 N.J. Eq. 169 (Ch. 1945), the court said:
"A conspicuous misuse or misapplication of technical terms will not be permitted to overthrow the indubitable design and evident contemplation of the testatrix. A similar imperfection in the use of the title `guardian' instead of `trustee' was present in New Jersey Title Guaranty and Trust Co. v. Smith, 90 N.J. Eq. 386; 108 Atl. Rep. 16."
While a sole trustee may not be the sole beneficiary, since the equitable title would merge in the legal title, one of several beneficiaries may be a trustee for all without a merger. Savings Investment & Trust Co. v. Little, 135 N.J. Eq. 546 (Ch. 1944); Mesce v. Gradone, 1 N.J. 159 (1948).
It is therefore here held that the language of paragraph Third imposes a trust upon the share of the estate left to the widow, to be used for her support, maintenance and care, and for the support, maintenance, care and education of the minor children.
Judgment will be entered accordingly.