GILL, EXR., v. GILL ET AL.

[Cite as Gill, Exr., v. Gill, 4 Ohio Misc. 141.]

(No. 668370—Decided August 3, 1965.)

CONSTRUCTION OF WILL: Probate Court of Cuyahoga County.

*Messrs. Marshman, Hornbeck, Hollington, Steadman & Mc-Laughlin,* for executor.

*Miss Blanche Hollander,* for guardian *ad litem* and trustee for suit.

ANDREWS, Chief Referee. Robert A. Gill, executor of the estate of Mrs. Adelaide Florence Gill, has filed a petition for a declaratory judgment, instructions, and other equitable relief.

The petition, in substance, alleges the following facts:

Mrs. Gill died on February 2, 1963. Her will was admitted to probate on May 2, 1963, on which date the plaintiff was appointed executor in accordance with item 2, paragraph seven, of the will. The will was executed on April 4, 1951.

Defendants Robert A. Gill, Philip A. Gill, and Aileen J. Porter are decedent's only children and heirs. In the application for probate of the will, dated April 2, 1963, Philip's age is shown as 56, Aileen's as 54, and Robert's as 53. It is alleged that all these "children" of the testatrix are competent.

Philip A. Gill has one child, Phyllis Ann James, who is a competent adult. Phyllis Ann James, in turn, has two children, both under the age of fourteen. Robert A. Gill and Aileen J. Porter have no children.

The debts and taxes of the estate have been paid, and the specific bequests distributed. The remaining assets of the estate consist of common stocks, which, when the petition was

142

filed, had a value of approximately $55,000, and also a bank account. The bank account appears to be around $1,600.

The petition states that the provisions of the will, specifically paragraphs three through six under item 2, are ambiguous and indefinite respecting (a) when the executor may make final distribution of the residue of the estate, and (b) to whom such distribution may be made. In plaintiff's opinion, no useful purpose will be served by the continuation of the estate, and the residue should be distributed forthwith to decedent's three children. However, plaintiff is unable to ascertain from the language of the will what course of action he may pursue, and thus requests a determination by this court.

In his prayer, plaintiff asks for a declaration of rights by, and instructions from, this court with respect to two questions:

(a) May the executor distribute the residue of the estate now, and if so, to whom should such distribution be made?

(b) If the answer to the above question is negative, when may the executor make final distribution of the estate residue, and to whom should such distribution be made?

Plaintiff prays also for such other and further relief as may be just and proper.

A guardian *ad litem* has been appointed for the minor children of Phyllis Ann James, and has filed an answer denying all the allegations in any way prejudicial to the minor defendants and asking the court to protect their interests. A trustee for the suit has been appointed for the unborn issue, next of kin, and lineal descendants of Robert A. Gill, Philip A. Gill, and Aileen J. Porter. The trustee has filed an answer denying the allegations of the petition and submitting the interests of the designated classes to the care and protection of the court.

The allegations of the petition are matters of record, and may be taken as facts.

We come, then, to the will.

Item 1 contains the customary direction for the payment of debts and funeral expenses.

The first two paragraphs of item 2 relate to specific bequests and are not before us.

I will set forth in full the troublesome paragraphs of item 2, rearranging their order in the interest of a more logical presentation.

Paragraph 4.

"My Will is that after my just debts are paid, $1,000.00 cash shall be given to each of my three children at once. Then for a period of ten years, $50.00 a month be given to each of my three children."

Paragraph 6.

"The rest of my properties, lots, investments and stocks are to be counted as my estate and to be handled with the executor's best judgment. Any income clearing at the end of each year from same estate is to be divided equally among my three children providing the executor is assured the estate warrants it."

Paragraph 5.

"The executor has full power to handle the estate in any way his judgment directs and to meet any emergencies in any of my three children's lives I so direct regarding monies or anything that he be given full power to act according to his own good judgment. In case one of my children die, his or her share reverts to the remaining children and if two should die then these shares shall revert to the remaining child."

Paragraph 3.

"In the event of the death of any one of my children, the share of such one shall be in the case of issue, held by executor until the age of 18—in the meantime said executor shall use his own discretion regarding distribution to same 'issue.' If at 18 years the issue or issues—as the case may be—shall not be deserving it is entirely up to the executor to determine this and decide how or in what manner or over what period of time the same share will be distributed."

It is arguable, though by no means certain, that from these paragraphs the testatrix may have wished her estate to be "handled" by a fiduciary for a period extending beyond that in which her executor would normally function, and to impose upon her executor duties beyond the temporary nature of his office and more appropriate to a trustee. See Chapters 2113, 2115, 2117, Revised Code; 1 Restatement of Trusts 2d, Section 6, Comment b.

Thus, the question arises whether, without realizing it, she manifested an intention to create a testamentary trust. Although there must be a sufficient manifestation of such an in-

144

tention, use of the word "trust" or "trustee" is not essential. Indeed, the settlor need not even know that the intended relationship constitutes a trust. See 1 Restatement of Trusts 2d, Section 23, Comment *a*, and Section 24, Comment *b*; Bogert, Trusts and Trustees (2d ed. 1965), Section 45, pages 312, 314-315. A footnote on page 315 cites several cases of trusts where, as here, the settlor used the word "executor" instead of trustee. In addition, see 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941), Section 1009, p. 1013; *Norris* v. *Norris* (1943), 40 Ohio Law Abs. 293, appeal dismissed, 142 Ohio St. 634 (quoting Restatement of Trusts, Sections 23 and 24); *Appleby* v. *Appleby* (1946), 139 N. J. Eq. 73, 50 A. 2d 885; *Tourigian* v. *Tourigian* (1953), 29 N. J. Super. 94, 101 A. 2d 611; *Priestley* v. *Tinkham* (1942), 68 R. I. 103, 26 A. 2d 599.

The principle is excellently stated in 5 Bowe-Parker, Page on Wills, Section 40.9 (1962):

"In determining whether or not testator intended to create a trust the will must be taken as a whole, and must be read in the light of the surrounding circumstances. When thus read as a whole the will may show that testator intended to create a trust although no specific provision therefor is found in the will. If the purpose which appears in the will cannot be carried into effect except by means of a trust, such will creates a trust although there may be no specific provision therefor in the entire will.

"This is frequently the case where the will gives powers to one, usually to the executor, or imposes duties on him which cannot be carried into effect in a practicable manner unless the executor is a trustee. * * * A direction to one to whom property is given to invest it, or to sell it, or to manage it, distribute it, and the like, for the benefit of another, shows that a trust is intended.

" * * *

"If the intention to create a trust does not appear from the language used, and if the will may be given effect without the existence of a trust, an intention to create a trust will not be inferred."

It is exceedingly difficult to figure out whether Mrs. Gill intended to create a trust. Fortunately, for reasons which will appear, no decision need be made on the point. I will assume,

without deciding, that the intent to create a trust existed, within the meaning of the authorities cited.

There is another equally important principle of trust law; namely, that the settlor must manifest with certainty not only his intent to have a trust, but also the terms of the trust. Bogert, Trusts and Trustees (2d ed. 1965), Section 45, p. 320; 3 Pomeroy, Equity Jurisprudence (5th ed. 1941), Section 1009; 96 C. J. S., Wills, Section 1012; 1 Restatement of Trusts 2d, Section 65 B ("A trust * * * may be unenforceable because of indefiniteness").

I have read a great many cases, and, typical of will and trust cases, they are so varied as to be of practically no help as precedents. As the late great Professor John Chipman Gray is reputed to have said: "The mode of dealing with one man's blunder is no guide as to the mode of dealing with another man's blunder."

Assuming, then, that Mrs. Gill intended to create a testamentary trust, it is my opinion that the attempted trust is void for uncertainty, indefiniteness, and vagueness, as to duration, and in other respects.

The testatrix does not express any definite and certain time for the termination of the trust. In fact, there is no provision at all for a final distribution of the trust estate. By paragraph six, each year's income is to be divided equally among the children if the executor is "assured the estate warrants it." But the will gives no inkling of when this is to cease and when the corpus is to be distributed. Paragraph four does provide for fifty dollars a month to each child for ten years, but there is nothing to indicate that the corpus is to be distributed upon the expiration of that period. We are not at liberty to draft a will for the testatrix through guesswork.

Paragraphs three and five are equally unenlightening, although paragraph three contains a provision that if one of Mrs. Gill's children dies leaving issue, that child's share shall be held by the exeuctor "until the age of 18," but if, when the issue reaches eighteen, he shall not be "deserving," the executor has the power to decide "how or in what manner or over what period of time the same will be distributed." There appears to be no terminal point here, for the "child" may be "undeserving" for the rest of his life. Moreover, we are not

told whether "share" refers to income or principal. And even though we were disposed to hold that insofar as the "issue" is concerned, termination of the trust is sufficiently definite because it is left to the discretion of the trustee (See 2 Restatement of Trusts 2d, Section 334, Comment *d.*), we are still left in the dark as to when the trust terminates insofar as the "children" are concerned. It is significant that the "children" are all in their fifties, and that when the will was executed, they were in their forties. All are competent. Thus, we do not have a situation wherein a testator is attempting to provide for the protection of minors or other incompetents.

Did the testatrix wish to withhhold the corpus from her "children" until they reached a certain age? Had this been her intention, she could easily have manifested it in her will.

As already mentioned, she never did indicate who was to receive the corpus or when.

There are some vague references in the will to the "share" of a child, but nowhere is it explained whether the references are to a share of the principal or a share of the income.

In paragraph five, for example, the testatrix directs that in case of the death of one of her children, that child's share reverts to the remaining children, but we are not told whether the share relates to income or corpus. And if it means the latter, we are given no hint of the time of distribution.

There follow some cases holding trusts void for uncertainty. In some of them, at least one element was uncertainty as to the duration of the trust. As one might expect, none are on all fours with the peculiar facts of this case. *Wittfield* v. *Forster* (1899), 124 Cal. 418, 57 P. 219 (inter vivos trust); *Lefrooth* v. *Prentice* (1927), 202 Cal. 215, 259 P. 947 (inter vivos); *Tucker* v. *Countryman* (1953), 414 Ill. 215, 111 N. E. 2d 101 (testamentary trust); *Banks* v. *Gregory* (1959), 16 Ill. 2d 227, 157 N. E. 2d 12 (inter vivos); *Boutelle* v. *Boutelle* (1963), 231 Md. 69, 188 A. 2d 559 (testamentary); *Keller* v. *Keller*, 49 Lancaster L. Rev. 49 (Lancaster, Pa. Com. Pl. 1944) (inter vivos); *Ruth* v. *Jester* (1957), 198 Va. 887, 96 S. E. 2d 741 (testamentary). See also *Cope* v. *Cope* (1887), 45 Ohio St. 464. This is not a trust case, but is one in which the Supreme Court holds a will void for uncertainty.

There are other uncertainties in the trust provisions. For

instance, paragraph five directs that if a child dies, his or her "share" reverts to the remaining children, whereas by paragraph three the deceased child's "share" is to be held by the executor for the child's issue. Possibly paragraph five is meant to refer to death without issue, as opposed to paragraph three covering death with issue surviving, but the will does not make this clear, and the two paragraphs may well be regarded as inconsistent.

We are also not told whether the death of a child refers to death before the testatrix or includes death after the testatrix, and we are not helped by any presumptions in this context.

The powers given to the executor are likewise vague. In paragraph six the "executor" is directed to "handle" the estate with his "best judgment." In paragraph five he is given full power to handle the estate in any way his judgment directs, and to meet any emergencies in the lives of any of the three children. The testatrix so directs "regarding monies or anything that he be given full power to act according to his own good judgment."

Would these powers permit him to use corpus to meet an emergency? Would they permit him to use more than a third of the corpus for one child if, in his judgment, the emergency required it? Would they give him free rein with reference to investments? Here, again, the will is vague and uncertain.

I recognize that many doubts arising from ambiguities and uncertainties in a trust instrument may be resolved by asking for instructions from a court. Bogert, Trusts and Trustees (2d ed. 1960), Section 559, page 87 (relating to powers of trustee). But there comes a point where, as indicated in the texts and decisions heretofore cited, the uncertainty becomes so pronounced that a court should declare the trust void for uncertainty. The present trust, if, indeed, a trust was intended, is in that category, and I hold that it is void for uncertainty.

The trust being invalid, the property goes to the three children in equal shares. See 96 A. L. R. 958; 96 Corpus Juris Secundum, Wills, Section 1017, page 552; *Wittfield* v. *Forster* (1899), 124 Cal. 418, 57 P. 219; *Tucker* v. *Countryman* (1953), 414 Ill. 215, 111 N. E. 2d 101; *Maught* v. *Getzendanner* (1886), 65 Md. 527, 5 A. 471.

Likewise, the trust being void and the property subject to

prompt distribution, there is no fund from which the monthly payments mentioned in paragraph four can be made. But since the children will each receive a third of the whole estate, they are in no way prejudiced.

My decision is based upon, and limited to, the peculiar situation before me, and it is not to be interpreted as going beyond the exact facts of this case.

Conclusion of Law

The property remaining in the estate of the testatrix should be distributed forthwith among the three children of the testatrix, namely, Philip A. Gill, Mrs. Aileen J. Porter, and Robert A. Gill, share and share alike.

*Judgment accordingly.*